**No. 22-2110**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

**COURTHOUSE NEWS SERVICE**,
*Plaintiff-Appellant*,

v.

**JACQUELINE C. SMITH, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia,**
*Defendant-Appellee*,

and

**COMMONWEALTH OF VIRGINIA,**
*Intervenor/Defendant-Appellee*.

---

On Appeal from the United States District Court for
the Eastern District of Virginia, Richmond Division,
Case No. 3:21-cv-460-HEH

---

# BRIEF OF AMICI CURIAE THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 38 MEDIA ORGANIZATIONS IN SUPPORT OF PLAINTIFF-APPELLANT

---

Bruce D. Brown
*Counsel of Record for Amici Curiae*
Katie Townsend*
Shannon A. Jankowski*
Tyler Takemoto*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
bruce.brown@rcfp.org

**Of Counsel*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

Reporters Committee for Freedom of the Press, The Associated Press, Axios Media Inc.,
(name of party/amicus)

The Center for Investigative Reporting (d/b/a Reveal), First Amendment Coalition

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

Freedom of the Press Foundation, The Institute for Nonprofit News, The International Documentary Association,
(name of party/amicus)

The Investigative Reporting Workshop, The Media Institute, The Foundation for National Progress, dba Mother Jones

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

The National Freedom of Information Coalition, National Newspaper Association, The National Press Club,
(name of party/amicus)

The National Press Club Journalism Institute, National Press Photographers Association

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

New England First Amendment Coalition, The News Leaders Association, News/Media Alliance,
(name of party/amicus)

The North Carolina Open Government Coalition, The North Carolina Press Association

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

Pro Publica, Inc., Radio Television Digital News Association, The Society of Environmental Journalists,
(name of party/amicus)

Society of Professional Journalists, The South Carolina Press Association, Student Press Law Center

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown　　　　Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing　　Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

Time USA, LLC, The Virginia Coalition for Open Government, The Virginia Press Association
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐ YES ☑ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

# DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Atlantic Monthly Group LLC, The McClatchy Company, LLC
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   The Atlantic Monthly Group LLC is owned by Emerson Collective and Atlantic Media, Inc.

   The McClatchy Company, LLC is owned by certain funds affiliated with Chatham Asset Management, LLC

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Tully Center for Free Speech, WP Company LLC d/b/a The Washington Post
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including all generations of parent corporations:

The Tully Center for Free Speech is a subsidiary of Syracuse University.

WP Company LLC d/b/a The Washington Post is a wholly-owned subsidiary of Nash Holdings LLC, a holding company owned by Jeffrey P. Bezos.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

The E.W. Scripps Company, The New York Times Company, TEGNA Inc.
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2110 Caption: Courthouse News Service v. Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

Gannett Co., Inc., Tribune Publishing Company, d/b/a the Daily Press and The Virginian-Pilot
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
If yes, identify all such owners:
BlackRock, Inc. and the Vanguard Group, Inc. each own ten percent or more of the stock of Gannett Co., Inc.

Alden Global Capital and affiliates own over 10% of Tribune Publishing Company's common stock. Nant Capital LLC, Dr. Patrick Soon-Shiong and California Capital Equity, LLC together own over 10% of Tribune Publishing Company's stock.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Bruce D. Brown Date: February 10, 2023

Counsel for: Reporters Committee for Freedom of the Press



Print to PDF for Filing Reset Form

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... iii

INTEREST OF AMICI CURIAE .......... 1

SOURCE OF AUTHORITY TO FILE .......... 3

FED. R. APP. P. 29(a)(4)(E) STATEMENT .......... 3

INTRODUCTION AND SUMMARY OF THE ARGUMENT .......... 4

ARGUMENT .......... 8

I. The Non-Attorney Access Restriction substantially burdens the public's presumptive constitutional right to inspect civil court records and impairs the news media's ability to report on court cases of public interest. .......... 8

II. The Non-Attorney Access Restriction violates the First Amendment. .......... 15

A. Because the Non-Attorney Access Restriction is speaker-based and infringes the public's presumptive right to inspect civil court records, *Press-Enterprise II* scrutiny should apply. .......... 15

B. The Non-Attorney Access Restriction is unconstitutional whether viewed under *Press-Enterprise II* scrutiny or as a time, place, and manner restriction. .......... 20

CONCLUSION .......... 27

CERTIFICATE OF COMPLIANCE .......... 28

CERTIFICATE OF SERVICE .......... 29

## TABLE OF AUTHORITIES

### Cases

*Ark. Writers' Project, Inc. v. Ragland*,
481 U.S. 221 (1987) ........ 17

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) ........ 15, 16

*Courthouse News Serv. v. Hade*,
No. 3:21-CV-460-HEH, 2022 WL 4485177 (E.D. Va. Sept. 27, 2022) ...... *passim*

*Courthouse News Serv. v. Planet*,
947 F.3d 581 (9th Cir. 2020) ........ 6

*Courthouse News Serv. v. Schaefer*,
2 F.4th 318 (4th Cir. 2021) ........ 4, 6, 19

*Courthouse News Serv. v. Schaefer*,
440 F. Supp. 3d 532 (E.D. Va. 2020) ........ 6, 21

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) ........ 4, 11, 19

*Elrod v. Burns*,
427 U.S. 347 (1976) ........ 19

*Grosjean v. Am. Press Co.*,
297 U.S. 233 (1936) ........ 17

*Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*,
24 F.3d 893 (7th Cir. 1994),
*superseded on other grounds as recognized by Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009) ........ 11

*Int'l News Serv. v. Associated Press*,
248 U.S. 215 (1918) ........ 10, 11

*Leathers v. Medlock*,
499 U.S. 439 (1991) ........ 17

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*,
460 U.S. 575 (1983) .......... 17

*Morse v. Frederick*,
551 U.S. 393 (2007) .......... 17

*Neb. Press Ass'n v. Stuart*,
427 U.S. 539 (1976) .......... 11

*Press-Enter. Co. v. Superior Court*,
464 U.S. 501 (1984) .......... 6

*Press-Enter. Co. v. Superior Court*,
478 U.S. 1 (1986) .......... 6, 19, 20

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 7

*Reynolds v. Middleton*,
779 F.3d 222 (4th Cir. 2015) .......... 15, 20, 25

*Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555, 569 (1980) .......... 4

*Rushford v. New Yorker Mag., Inc.*,
846 F.2d 249 (4th Cir. 1988) .......... 4

*Schneider v. New Jersey*,
308 U.S. 147 (1939) .......... 26

*Wis. Action Coal. v. City of Kenosha*,
767 F.2d 1248 (7th Cir. 1985) .......... 26

**Statutes**

42 U.S.C. § 1983 .......... 5

Va. Code § 8.01-420.8 .......... 24

**Other Authorities**

Andrew D. Bradt & Zachary D. Clopton, *Party Preferences in Multidistrict Litigation*,
107 Calif. L. Rev. 1713 (2019) .......... 23

Brad Adgate, *Newspapers Have Been Struggling and Then Came the Pandemic*, Forbes (Aug. 20, 2021), https://perma.cc/3CKC-PSUD ........................................................................ 13

Elizabeth Grieco et al., *About a third of large U.S. newspapers have suffered layoffs since 2017*, Pew Rsch. Ctr. (July 23, 2018), https://perma.cc/Y9ES-DT47 ........................................................................ 13

Fed. R. Civ. P. 5.2 ........................................................................ 24

Fred Fedler et al., Reporting for the Media (8th ed. 2005) ................................ 9, 10

*Googlebot*, Google Search Cent., https://perma.cc/8XH4-7WMC (last updated Jan. 6, 2023) ................................ 22

*How Americans describe their news consumption behaviors*, Am. Press Inst. (June 11, 2018), https://perma.cc/M3L2-84PB ........................................................................ 10

J. Jonas Anderson, Paul R. Gugliuzza & Jason A. Rantanen, *Extraordinary Writ or Ordinary Remedy? Mandamus at the Federal Circuit*, 100 Wash. U. L. Rev. 327 (2022) ........................................................................ 23

Jamie Lee Williams, *Cavalier Bot Regulation and the First Amendment's Threat Model*, Knight First Amend. Inst. (Aug. 21, 2019), https://perma.cc/93QC-Q82D ........................................................................ 22

Janet Kolodzy, Convergence Journalism: Writing and Reporting Across the News Media (2006) ........................................................................ 9

Josh Gerstein, *7 Capitol Police Officers Sue Trump, Others over Capitol Riot*, Politico (Aug. 26, 2021, 1:17 PM), https://perma.cc/MG3D-C54J ........................................................................ 9

Naveen Joshi, *Data Journalism: How Big Data-Driven Analytics Improves Newsmaking*, Forbes (Apr. 11, 2022), https://perma.cc/6NE4-3LVC ........................................................................ 23

Penelope Muse Abernathy, Univ. N.C., *News Deserts and Ghost Newspapers: Will Local News Survive?* (2020), https://perma.cc/4PSK-3QUY ........................................................................ 13, 14

Tejas N. Narechania, *Certiorari in Important Cases*,
122 Colum. L. Rev. 923 (2022) ........................................................................ 23

Toni Locy, Covering America's Courts: A Clash of Rights (2013) ...................... 10

U.S. Courts, Application Period Opens for PACER User Group
(Mar. 31, 2022),
https://perma.cc/EFW7-S43V ........................................................................ 8, 22

*Why Web Scraping Is Vital to Democracy*, The Markup (Dec. 3, 2020),
https://perma.cc/LA3E-MZKC........................................................................ 23

Zoe Tillman (@ZoeTillman), Twitter (Aug. 26, 2021, 11:11 AM),
https://perma.cc/HK97-NAFG ........................................................................ 9

Zoe Tillman, *Seven Capitol Police Officers Suing Trump Shared The Violence And Racism They Experienced On Jan. 6*, BuzzFeed News (Aug. 26, 2021, 1:04 PM),
https://perma.cc/CJ83-ZDEF........................................................................ 9

## INTEREST OF AMICI CURIAE

Amici are the Reporters Committee for Freedom of the Press ("Reporters Committee"); The Associated Press; The Atlantic Monthly Group LLC; Axios Media Inc.; The Center for Investigative Reporting (d/b/a Reveal); The E.W. Scripps Company; First Amendment Coalition; Freedom of the Press Foundation; Gannett Co., Inc.; Institute for Nonprofit News; International Documentary Association; Investigative Reporting Workshop at American University; The McClatchy Company, LLC; The Media Institute; Mother Jones; National Freedom of Information Coalition; National Newspaper Association; The National Press Club; National Press Club Journalism Institute; National Press Photographers Association; New England First Amendment Coalition; The New York Times Company; The News Leaders Association; News/Media Alliance; North Carolina Open Government Coalition; North Carolina Press Association; Pro Publica, Inc.; Radio Television Digital News Association; Society of Environmental Journalists; Society of Professional Journalists; South Carolina Press Association; Student Press Law Center; TEGNA Inc.; TIME USA, LLC; Tribune Publishing Company, d/b/a the Daily Press and The Virginian-Pilot; Tully Center for Free Speech; Virginia Coalition for Open Government; Virginia Press Association; and The Washington Post.

Lead amicus the Reporters Committee is an unincorporated nonprofit association. The Reporters Committee was founded by journalists and media lawyers in 1970, when the nation's press faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

As members of the news media and of organizations that defend the First Amendment and newsgathering rights of the press, amici have a strong interest in ensuring that the public's presumptive right to inspect judicial records under the First Amendment is not infringed and that unconstitutional, speaker-based restrictions on the exercise of First Amendment rights are not imposed. Amici, some of which are CNS subscribers, write to emphasize the public interest at stake in this case and to underscore the importance of timely access to civil court records to the news media's ability to keep the public informed about court cases in Virginia.

## SOURCE OF AUTHORITY TO FILE

Amici have obtained consent to file this brief from all parties and therefore may file it pursuant to Federal Rule of Appellate Procedure 29(a)(2).

## FED. R. APP. P. 29(a)(4)(E) STATEMENT

No party's counsel authored any part of this brief. No person other than amici or their counsel contributed money intended to fund the brief's preparation or submission.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The First Amendment guarantees the public a qualified right of access to judicial proceedings and documents that is rooted in the understanding that public oversight of the judicial system is essential to the proper functioning of that system and, more generally, to our democratic system of self-governance. *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 575–77 (1980) (plurality opinion). As this Court has recognized, that presumptive constitutional right of access applies to civil court records. *See, e.g.*, *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 327–28 (4th Cir. 2021); *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). And circuit courts in Virginia have long made these records publicly accessible at public access terminals located at each individual circuit courthouse. JA81 ¶ 24. All members of the public, regardless of their profession, are permitted to use those public access terminals during weekday courthouse business hours. *Id.* ¶ 25.

In 2012, Appellees implemented the Officer of the Court Remote Access ("OCRA") system. JA82 ¶ 27. Subscribers to OCRA are afforded contemporaneous online access to all non-confidential civil court records from 105 participating circuit courthouses. *Id.*; JA86 ¶ 42. This remote, electronic access is available twenty-four hours a day, seven days a week. JA86 ¶ 44. However,

unlike the access afforded by courthouse public access terminals, the ability to subscribe to OCRA is limited solely to attorneys licensed to practice law in Virginia, and to select government agencies, in Appellees' discretion (hereinafter, the "Non-Attorney Access Restriction"). JA82 ¶ 28; Br. of Pl.-Appellant ("CNS Br.") at 7.

Appellant Courthouse News Service ("CNS") filed an amended complaint in the United States District Court for the Eastern District of Virginia (the "District Court") alleging three claims for relief pursuant to 42 U.S.C. § 1983, including that the Non-Attorney Access Restriction is an unconstitutional speaker-based restriction on speech that violates the press and the general public's presumptive right of contemporaneous access to newly filed civil complaints and other public court records under the First Amendment ("Count One"). JA32–34 ¶¶ 86–93.[1] After the District Court dismissed Count Three of the amended complaint, the parties cross-moved for summary judgment on the remaining counts. The District Court denied CNS's motion for summary judgment in its entirety and entered summary judgment in favor of Appellees. *Courthouse News Serv. v. Hade*, No. 3:21-CV-460-HEH, 2022 WL 4485177, at *2 (E.D. Va. Sept. 27, 2022).

[1] Count Two of the amended complaint alleges that Appellees' prohibition on disseminating information contained in non-confidential civil court records accessed remotely through OCRA violates the First Amendment. JA34–35 ¶¶ 94–101. Count Three alleges that the Non-Attorney Access Restriction violates the Equal Protection Clause. JA35–36 ¶¶ 102–107.

Amici agree with CNS that the District Court erred in denying CNS's motion for summary judgment in its entirety. Amici write to address, in particular, the District Court's errors with respect to Count One of the amended complaint. In denying CNS's motion for summary judgment on Count One, the District Court incorrectly held that the Non-Attorney Access Restriction "resembles a [content-neutral] time, place, and manner restriction," *id.* at *5, and thus need not satisfy the strict or "rigorous" scrutiny required under *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9–10 (1986) ("*Press-Enterprise II*") (holding that, once the presumptive First Amendment right of access attaches, it can be overcome only by "an overriding [governmental] interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." (citing *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"))).[2]

[2] In *Schaefer*, this Court affirmed a lower court's decision finding that certain access restrictions violated the presumptive right of contemporaneous access to newly filed civil complaints. 2 F.4th at 328. As CNS explains, CNS Br. at 41–44, although the lower court came to the correct conclusion, it appears to have misunderstood the Ninth Circuit's characterization of the scrutiny applied in *Press-Enterprise II* as being "rigorous, but not strict," *Courthouse News Serv. v. Planet*, 947 F.3d 581, 596 (9th Cir. 2020) (internal quotation marks omitted), to mean that violations of the presumptive right of access are subject to intermediate scrutiny, not strict scrutiny. *See Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 559–60 (E.D. Va. 2020). Regardless of the term used, however, access restrictions, such as those at issue here, must meet the standard set forth in *Press-Enterprise II*.

Appellees' purported reasons for restricting access to OCRA to only a certain category of speakers—while denying such access to members of the press and the general public—are based on Appellees' assumptions about how some members of the non-preferred speaker group may use or disseminate the information available on OCRA. *See* JA120–122. Thus, the Non-Attorney Access Restriction is not "content-neutral" but rather amounts to unconstitutional speaker-based discrimination that demands strict scrutiny. *See Reed v. Town of Gilbert*, 576 U.S. 155, 169–71 (2015) (recognizing that because speaker-based restrictions "are all too often simply a means to control content," they "demand strict scrutiny" (citations omitted)). Moreover, in denying the press and the greater public access to OCRA, the Non-Attorney Access Restriction infringes the public's presumptive constitutional right of contemporaneous access to civil court records and, accordingly, must satisfy the standard set forth by the Supreme Court in *Press-Enterprise II*. The Non-Attorney Access Restriction does not pass constitutional muster and the District Court erred in holding otherwise.

If not reversed, the District Court's order will hamper the ability of the news media to report on court proceedings of public interest in Virginia and around the country. Journalists regularly rely on remote online systems like OCRA to access court records which, in turn, enables them to timely and accurately report on court cases of public interest. Indeed, federal courts have provided such access to

members of the press and the public for more than thirty years through the Public Access to Court Electronic Records ("PACER") system. *See* U.S. Courts, *Application Period Opens for PACER User Group* (Mar. 31, 2022), https://perma.cc/EFW7-S43V. And courts in at least thirty-eight states provide some means of public online electronic access to judicial records. *See* JA79 ¶¶ 10–11; JA149 ¶¶ 26–28. The news media's ability to access judicial records through these systems facilitates prompt and accurate reporting on court proceedings. In permitting Appellees to deny members of the public, including the press, the ability to access presumptively public court records through a similar remote system based on mere speculation of potential harms, the District Court's decision violates the First Amendment.

For the reasons herein, amici respectfully urge this Court to reverse.

## ARGUMENT

### I. The Non-Attorney Access Restriction substantially burdens the public's presumptive constitutional right to inspect civil court records and impairs the news media's ability to report on court cases of public interest.

News media organizations like CNS play a crucial role in informing the public about specific court cases of public interest, as well as the judicial system as a whole. A well-functioning democracy requires a public that is knowledgeable and informed about the workings of the judicial branch. Court records are the most valuable and direct sources of reliable information for journalists reporting on

criminal matters and civil lawsuits. Journalists rely on access to court records to ensure their reporting about the judicial system is accurate and complete. Reporters and the public alike thus benefit tremendously when news reports can reference, quote from, and hyperlink to court documents.

Indeed, including links to court documents is not the exception in news reporting; it is increasingly the norm. And, in jurisdictions where the press has online access to court records, a journalist reporting on a newly filed lawsuit may share a copy of the complaint that same day. *See, e.g.*, Zoe Tillman (@ZoeTillman), Twitter (Aug. 26, 2021, 11:11 AM), https://perma.cc/HK97-NAFG (BuzzFeed News legal reporter sharing link to newly filed civil complaint). This, in turn, allows reporters to publish timely articles reporting on the lawsuit in greater depth. *See, e.g*., Zoe Tillman, *Seven Capitol Police Officers Suing Trump Shared The Violence And Racism They Experienced On Jan. 6*, BuzzFeed News (Aug. 26, 2021, 1:04 PM), https://perma.cc/CJ83-ZDEF; Josh Gerstein, *7 Capitol Police Officers Sue Trump, Others over Capitol Riot*, Politico (Aug. 26, 2021, 1:17 PM), https://perma.cc/MG3D-C54J.

Timeliness is a critical component of news. As one journalism scholar stated succinctly: "It is, after all, called the 'news' business and not the 'olds' business." Janet Kolodzy, Convergence Journalism: Writing and Reporting Across the News Media 59 (2006); *see also* Fred Fedler et al., Reporting for the Media

123 (8th ed. 2005) (describing timeliness as one of the key characteristics of news). In an era of close-to-instantaneous digital communication, the work of producing timely, factual reporting is as important as ever. The public's voracious appetite for up-to-the-minute news coverage has kept pace with evolving technology. "By a large majority, nearly two-thirds of adults now say they look at news at least several times a day. We are now a nation of serial news consumers." *How Americans describe their news consumption behaviors*, Am. Press Inst. (June 11, 2018), https://perma.cc/M3L2-84PB. Indeed, "[t]he peculiar value of news is in the spreading of it while it is fresh." *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 235 (1918). And, today, the timeframe for what is considered "fresh" is shorter than ever. The websites of the *Los Angeles Times* and *The New York Times*, for example, measure the timeliness of news updates in minutes. Other news services, such as Dow Jones Newswires, and social media platforms like Twitter, mark new posts by the second. *See* Toni Locy, Covering America's Courts: A Clash of Rights 13 (2013) ("In the Internet age, a deadline passes every second.").

Delaying access by even one day may imperil the news media's ability to provide meaningful reporting on newly filed, newsworthy lawsuits, as the next day's headlines can eclipse yesterday's news. Indeed, policies that delay access to judicial records—like the Non-Attorney Access Restriction—can amount to a

complete denial of meaningful access, as "old news" does not receive the same level of public attention as timely news and may not be published at all. In contrast, timely access to civil court records allows the news media to report on them when their newsworthiness is at its apex.

Accordingly, the Supreme Court and federal courts of appeals, including this one, have repeatedly recognized timeliness as a fundamental feature of news. *See, e.g.*, *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 561 (1976) ("As a practical matter . . . the element of time is not unimportant if press coverage is to fulfill its traditional function of bringing news to the public promptly."); *Int'l News Serv.*, 248 U.S. at 235 (recognizing a quasi-property interest in "fresh" news); *Pub. Citizen*, 749 F.3d at 272. "[T]he public benefits attendant with open proceedings are compromised by delayed disclosure," *Pub. Citizen*, 749 F.3d at 272, in part, as the Seventh Circuit has explained, because "[t]he newsworthiness of a particular story is often fleeting," and, thus, "[t]o delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression," *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994), *superseded on other grounds as recognized by Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009).

When covering the federal courts and courts in at least thirty-eight states, the news media's ability to provide accurate and timely reporting about cases of public

concern is facilitated by public access to systems that provide remote online access to court records. JA79 ¶¶ 10–11; JA149 ¶¶ 26–28. Through access to such systems, journalists are able to quickly and easily inspect new court filings and disseminate news about matters of public concern in a timely fashion.

OCRA—like PACER and other, similar state systems—provides remote access to non-confidential civil court records twenty-four hours a day, seven days a week. JA86 ¶ 44. However, unlike those systems, OCRA restricts the ability to use it to only Virginia-licensed attorneys and select government agencies. JA82 ¶ 28; CNS Br. at 7. Not only does this speaker-based restriction violate the First Amendment, *see* Section II, *infra*, but it is also glaringly bad policy. Unlike their counterparts who report on federal court proceedings, or on state court proceedings in the majority of states where remote online access to court records is available, reporters covering Virginia circuit courts must travel to each individual courthouse to view court records on a public access terminal—and can do so only on days and times when the courthouse is open. More than a mere inconvenience, these burdens significantly hamper the news media's ability to timely report on court cases of interest (and importance) to the public that are pending throughout the Commonwealth, including in the 105 Virginia circuit courts that utilize OCRA and which cover a distance of over 30,000 square miles. JA149–150 ¶ 29.

For example, when parties submit non-confidential civil court filings near the close of business, or on the eve of a weekend or holiday, press access to such filings through a public access terminal will be inevitably delayed. But these same filings will be promptly available to certain, other speakers via OCRA. Similarly, when parties submit filings at courthouses in remote parts of the Commonwealth, the news media's ability to timely report on such filings may be rendered impracticable by a variety of factors, such as staff availability, weather conditions, and distance needed to travel to the courthouse.

In these situations, it is the public that suffers. Since the early 2000s, the news industry in the United States has experienced financial strain as advertising revenue has declined. *See* Brad Adgate, *Newspapers Have Been Struggling and Then Came the Pandemic*, Forbes (Aug. 20, 2021), https://perma.cc/3CKC-PSUD. As a result, from January 2017 to April 2018, alone, at least thirty-six percent of the largest newspapers in the country laid off staff, including more than half of newspapers with circulations greater than 250,000. Elizabeth Grieco et al., *About a third of large U.S. newspapers have suffered layoffs since 2017*, Pew Rsch. Ctr. (July 23, 2018), https://perma.cc/Y9ES-DT47. And, between 2004 and 2019, more than 2,000 weekly and nondaily news outlets shut down completely. Penelope Muse Abernathy, Univ. N.C., *News Deserts and Ghost Newspapers: Will Local News Survive?* 11 (2020), https://perma.cc/4PSK-3QUY. The demise of these

news outlets has contributed to the existence of 1,800 so-called "news deserts" across the country, *id.* at 12, specifically, communities that (1) have no local newspaper, or (2) communities that have a local newspaper but whose "residents are facing significantly diminished access to the sort of important local news and information that feeds grassroots democracy," *id.* at 115. Indeed, as of 2020, at least a half-dozen counties in Virginia were without local newspapers. *Id.* at 20.

In the absence of a local news outlet, residents of these communities must rely on larger city- or state-wide publications to report on matters of public concern in their area, including information about local court proceedings. And the impracticalities of traveling to the more than 100 courthouses around the Commonwealth to view—and report on—court records mean that these publications must inevitably limit their coverage to a small number of courts, potentially leaving many Virginia communities without access to reporting on court proceedings of local importance. Indeed, as CNS has reported, even when tasked solely with traveling to individual courthouses to view court records beginning "when one clerk's office opened" and ending "as the last clerk's office closed," reporters were able to visit only 25 of the 105 Virginia courts that utilize OCRA over the course of five days. CNS Br. at 13. A reporter tasked with additional assignments—as is the norm—could cover significantly fewer.

The ability to access non-confidential civil court records remotely through OCRA would aid the news media in covering court proceedings across the Commonwealth and, ultimately, make for a more informed public. Denying the press and the greater public access to OCRA undermines the important public policy goals underlying the presumption of public access to court records and hampers the news media's ability to keep the public informed.

## II. The Non-Attorney Access Restriction violates the First Amendment.

### A. Because the Non-Attorney Access Restriction is speaker-based and infringes the public's presumptive right to inspect civil court records, *Press-Enterprise II* scrutiny should apply.

The District Court erred in finding that the Non-Attorney Access Restriction is not subject to *Press-Enterprise II* scrutiny but rather to intermediate scrutiny under a time, place, and manner analysis. *Hade*, 2022 WL 4485177, at *6.

However, a time, place, and manner analysis is not appropriate for evaluating restrictions that are content based, such as the Non-Attorney Access Restriction here. *Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015). The First Amendment presumptively prohibits laws that regulate expression based on the identity of the speaker. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 352–53 (2010). Such restrictions, as the Supreme Court has observed, "are all too often simply a means to control content." *Id.* at 340. Accordingly, speaker-based restrictions are presumptively unconstitutional unless the government can

demonstrate that the restrictions "further[] a compelling interest and [are] narrowly tailored to achieve that interest." *Id.* (citation omitted).

Here, the Non-Attorney Access Restriction limits the ability to subscribe to—and thus access civil court records via—OCRA to only two categories of speakers: Virginia-licensed attorneys and certain government agencies. All other speakers, including members of the press, are denied such access. Thus, the Non-Attorney Access Restriction selectively, discriminatorily denies members of the press contemporaneous access to non-confidential civil court records outside of courthouse hours, on weekends and holidays, while providing such access to favored speakers. Such speaker-based restrictions impose unconstitutional delays and, in some instances—such as when distance or travel conditions preclude a reporter's journey to a physical courthouse in a distant part of the Commonwealth—may, as a practical matter, constructively deny access to judicial records altogether.

Appellees concede that imposing such speaker-based burdens is the very purpose of the Non-Attorney Access Restriction. Appellees contend that bad actors would exploit the convenience of access through OCRA should it be made available to members of the press and the general public. The Non-Attorney Access Restriction, therefore, deliberately functions to restrict the ability of the press and others to obtain contemporaneous access to civil court records while

simultaneously facilitating such access for a preferred group of speakers. By preferring some speakers over others, the Non-Attorney Access Restriction "strikes at the very heart of the First Amendment." *Morse v. Frederick*, 551 U.S. 393, 423 (2007) (Alito, J., concurring). Moreover, because it makes reporting on court proceedings across the Commonwealth—particularly in "news deserts" that lack a local news outlet—impracticable if not impossible, the Non-Attorney Access Restriction presents "the danger of suppressing[] particular" news coverage entirely. *Leathers v. Medlock*, 499 U.S. 439, 453 (1991).

The Supreme Court has been especially skeptical of speaker-based restrictions that burden members of the news media, because such restrictions can function "as a censor to check critical comment by the press, undercutting the basic assumption of our political system that the press will often serve as an important restraint on government." *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 585 (1983). Indeed, the Supreme Court has repeatedly invalidated laws that discriminate against the press even where a statute could otherwise be characterized as regulating commerce or conduct rather than speech. *See, e.g.*, *id.* at 575 (finding that a use tax on paper and ink impermissibly singled out the press); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 (1987) (finding a tax scheme that exempted certain journals but not general interest magazines unconstitutional); *Grosjean v. Am. Press Co.*, 297 U.S. 233, 251 (1936)

(finding a tax imposed on high-circulation publications, in particular, unconstitutional).[3] Here, too, the Non-Attorney Access Restriction imposes speaker-based burdens on the press and threatens to suppress news reporting. Accordingly, the Non-Attorney Access Restriction is not content-neutral and the District Court erred in applying a time, place, and manner analysis. *Hade*, 2022 WL 4485177, at *6–7.

Yet even if this Court were to affirm the District Court's finding that the Non-Attorney Access Restriction is content-neutral, *Press-Enterprise II* scrutiny should still apply. The District Court incorrectly concluded that because "no court has held that there is a fundamental First Amendment right to access . . . civil records over the internet" and because the press and the public have access to judicial records at courthouse public access terminals, the Non-Attorney Access Restriction "resembles a time, place, and manner restriction" and, therefore, need not satisfy *Press-Enterprise II* scrutiny. *Id.* at *5–6. But the means by which judicial records are made available—electronically, in-person, or both—are not determinative of whether there is a fundamental First Amendment right of access to such records. This Court has repeatedly held that there is a presumptive First

---

[3] As a result, Appellees' effort to characterize the Non-Attorney Access Restriction as regulating the act of access is beside the point: the Non-Attorney Access Restriction offends the First Amendment by discriminating against the press.

Amendment right of access to most civil court records. *See, e.g.*, *Pub. Citizen*, 749 F.3d at 267–69; *Schaefer*, 2 F.4th at 328. And, in implementing OCRA, Appellees chose to make non-confidential civil court records (to which the presumptive right of access attaches) available only to certain members of the public—including, primarily, Virginia-licensed attorneys—via online access. Having chosen to make such records available electronically through OCRA, Appellees now must show that any restrictions on that access—including discriminatory restrictions denying access to certain members of the public, including the press—are narrowly tailored to a compelling government interest. *See Press-Enterprise II*, 478 U.S. at 9–10.

Moreover, where, as here, the presumptive right of public access applies, it is a right of contemporaneous access. *Schaefer*, 2 F.4th at 328. Access to judicial records at courthouse terminals is available only during the court's weekday business hours and not on weekends or holidays. OCRA, on the other hand, provides contemporaneous access to non-confidential civil court records twenty-four hours a day, seven days a week. Thus, by denying the press and the greater public the ability to access court records via OCRA, the Non-Attorney Access Restriction infringes their constitutional right of contemporaneous access to civil court records and demands *Press-Enterprise II* scrutiny. *See Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (finding that a loss of First Amendment rights, "for even minimal periods of time, unquestionably constitutes irreparable injury").

### B. The Non-Attorney Access Restriction is unconstitutional whether viewed under *Press-Enterprise II* scrutiny or as a time, place, and manner restriction.

Regardless of whether this Court subjects the Non-Attorney Access Restriction to *Press-Enterprise II* scrutiny, or views it as a time, place, and manner restriction subject to intermediate scrutiny, the Non-Attorney Access Restriction violates the First Amendment. To satisfy *Press-Enterprise II* scrutiny, the Non-Attorney Access Restriction must be narrowly tailored to serve a compelling government interest. *Press-Enterprise II*, 478 U.S. at 9–10. Time, place, and manner restrictions are permitted only when they are "narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." *Reynolds*, 779 F.3d at 225–26 (citation omitted).

Appellees argue that the Non-Attorney Access Restriction is necessary to "promoting critical privacy and security interests of Virginia litigants by sharply reducing the amount of private, sensitive information let out into the world and limiting the potential for widespread data harvesting which is often done by bots." *Hade*, 2022 WL 4485177, at *3. Of "central concern" to Appellees is that such private, sensitive information "may be later resold or disseminated." *Id*. Appellees further argue that the Non-Attorney Access Restriction aids the orderly administration of justice by "reducing the burden placed upon the clerk's office to

provide filings directly to those attorneys [permitted to subscribe to OCRA] physically at the courthouse." *Id.*

Even assuming, *arguendo*, that the Non-Attorney Access Restriction is a content-neutral restriction, and that the interests advanced by Appellees are compelling government interests (under *Press-Enterprise II* scrutiny) or significant government interests (under a time, place, and manner analysis), Appellees have not made—and could not make—any showing that the Non-Attorney Access Restriction is necessary to serve such interests or is narrowly tailored to do so.

*First*, as CNS explains, CNS Br. at 52–53, the evidence presented by Appellees—primarily law review articles and secondary sources—does not support Appellees' speculative argument that the Non-Attorney Access Restriction is necessary to "limit[] the ***potential*** for widespread data harvesting" by bots. *Hade*, 2022 WL 4485177, at *3 (emphasis added). Rather, a party seeking to restrict access must "come forward with evidence, not mere argument, to show that [such restrictions] are narrowly tailored to some higher governmental interest." *Schaefer*, 440 F. Supp. 3d at 560.

The absence of such non-speculative evidence is particularly noteworthy, because (many) counterfactuals already exist. Federal courts and courts in at least thirty-eight states provide contemporaneous online access to judicial records to everyone. *See* JA79 ¶¶ 10–11; JA149 ¶¶ 26–28. One such system—the federal

PACER system—has been in existence for more than thirty years and, as of March 2022, had more than three million registered accounts. *See* U.S. Courts, *supra*. Appellees proffered no evidence to suggest that the electronic public access to court records afforded by PACER (or by any similar system used by the majority of state court systems) has resulted in "widespread data harvesting" by bots or in the resale of private, sensitive information.

Indeed, Appellees' arguments seem to misunderstand how bots and data mining actually operate online. Bots are ubiquitous and, contrary to their image in the overheated imagination of some observers as nothing but malicious, a significant number serve to enable the internet's basic architecture to function. Jamie Lee Williams, *Cavalier Bot Regulation and the First Amendment's Threat Model*, Knight First Amend. Inst. (Aug. 21, 2019), https://perma.cc/93QC-Q82D. In fact, most traffic on the internet is automated traffic by bots. *Id*. Without bot traffic, internet users would not be able to perform basic tasks, like finding a website through a search engine like Google. *Googlebot*, Google Search Cent., https://perma.cc/8XH4-7WMC (last updated Jan. 6, 2023).

Further, by casting all data collection in a sinister light, Appellees ignore an increasingly important area of journalism. The availability of broad and varying swaths of information online has allowed data journalists to uncover and report newsworthy insights about society with unprecedented accuracy and speed. *See*

Naveen Joshi, *Data Journalism: How Big Data-Driven Analytics Improves Newsmaking*, Forbes (Apr. 11, 2022), https://perma.cc/6NE4-3LVC. In recent years, this kind of data collection and analysis has fueled unique and timely journalism about matters of urgent public concern, including the COVID-19 crisis and the spread of online extremism. *See Why Web Scraping Is Vital to Democracy*, The Markup (Dec. 3, 2020), https://perma.cc/LA3E-MZKC. And, in the legal field, data-driven analyses are a necessary precursor to fact-based discussions about the judicial system. *E.g.*, Andrew D. Bradt & Zachary D. Clopton, *Party Preferences in Multidistrict Litigation*, 107 Calif. L. Rev. 1713 (2019); Tejas N. Narechania, *Certiorari in Important Cases*, 122 Colum. L. Rev. 923 (2022); J. Jonas Anderson, Paul R. Gugliuzza & Jason A. Rantanen, *Extraordinary Writ or Ordinary Remedy? Mandamus at the Federal Circuit*, 100 Wash. U. L. Rev. 327 (2022). Appellees' conclusory, speculative arguments ignore these realities.

In any event, it defies reason for Appellees to contend that there are no less restrictive means available to advance Appellees' purported interest in "promoting critical privacy and security interests of Virginia litigants" than the wholesale denial of access to OCRA for anyone other than Virginia-licensed attorneys and select government agencies. The notion that, because some bots may be malicious, all members of the press and general public must be denied access to OCRA is

drastically disproportionate. Rather than taking practicable steps to safeguard OCRA against unauthorized or malicious use, Appellees instead have elected to deny the press and the general public access to OCRA and, thus, contemporaneous access to non-confidential civil court records that they provide to other, more-favored speakers. This approach is in no way narrowly tailored and, thus, it cannot pass constitutional muster under *Press Enterprise II* or under a time, place, and manner analysis.

*Second*, the Non-Attorney Access Restriction is neither essential nor narrowly tailored to serve Appellees' purported interest in the confidentiality of "private, sensitive information." As a preliminary matter, only non-confidential civil court records are available via OCRA. Moreover, under Virginia law, a filer is responsible for redacting any social security numbers or financial account numbers prior to filing any document with the court. *E.g.*, Va. Code § 8.01-420.8(A). And, to the extent Appellees seek to safeguard additional categories of potentially private or sensitive information, the Non-Attorney Access Restriction is not narrowly tailored to serve that interest. As CNS explains, several less speech-restrictive means are readily available to Appellees to achieve this result, including those employed by federal and state courts that provide online public access to court records. *See* CNS Br. at 58–61; s*ee also, e.g.*, Fed. R. Civ. P. 5.2 (requiring both paper and electronic filers to redact certain categories of confidential

information). Moreover, the civil court records available on OCRA are identical to those available for viewing on public access terminals at circuit courthouses. JA87 ¶¶ 48–49. Thus, the Non-Attorney Access Restriction could not prevent a speculative "bad actor" from obtaining the information contained in the court records.

*Third*, and finally, to the extent Appellees argue that the Non-Attorney Access Restriction aids the orderly administration of justice by "reducing the burden placed upon the clerk's office to provide filings directly to those attorneys [permitted to subscribe to OCRA] physically at the courthouse," *Hade*, 2022 WL 4485177, at *3, it stands to reason that expanding access to OCRA to members of the press and the general public will further reduce that burden.

For these reasons, the Non-Attorney Access Restriction fails under either *Press-Enterprise II* scrutiny or a time, place, and manner analysis. The Non-Attorney Access Restriction additionally fails under a time, place, and manner analysis because it does not leave open "ample alternative channels," *Reynolds*, 779 F.3d at 225–26 (citation omitted), for contemporaneous access to non-confidential civil court records across all 105 circuit courts that utilize OCRA. To the contrary, there are no alternative channels available for public access to such records outside of courthouse business hours, on weekends, or on holidays—a right of contemporaneous access that is available to Virginia-licensed attorneys and

other select, favored-speakers via OCRA. Moreover, as described in Section I, the time and personnel resources necessary to travel to multiple courthouses over multiple counties make obtaining access to civil court records in proceedings across the Commonwealth impracticable, if not impossible, thus depriving the public of reporting on matters of public interest and concern. *See Schneider v. New Jersey*, 308 U.S. 147, 163 (1939) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place."); *Wis. Action Coal. v. City of Kenosha*, 767 F.2d 1248, 1259 (7th Cir. 1985) (partially invalidating a content-neutral restriction on charitable, religious, and political solicitation as enforced between the hour of 8:00 p.m. and 9:00 p.m. because solicitation during the unregulated hours of the day was not an "ample and adequate alternative").

## CONCLUSION

For the foregoing reasons, amici urge the Court to reverse the District Court's order.

Dated: February 10, 2023

Respectfully submitted,

*/s/ Bruce D. Brown*
Bruce D. Brown
*Counsel of Record for Amici Curiae*
Katie Townsend*
Shannon A. Jankowski*
Tyler Takemoto*
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310
bruce.brown@rcfp.org

**Of Counsel*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7) because it contains 5,682 words, excluding the portions exempted by Fed. R. App. P. 32(f). The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: February 10, 2023

*/s/ Bruce D. Brown*
Bruce D. Brown
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2023, I caused the foregoing Brief of Amici Curiae to be electronically filed with the Clerk of the Court using the appellate CM/ECF system, which will automatically send notice of such filing to all counsel of record.

Dated: February 10, 2023

*/s/ Bruce D. Brown*
Bruce D. Brown
*Counsel for Amici Curiae*