**CASE NO. 22-2110**

# IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

COURTHOUSE NEWS SERVICE,

*Plaintiff - Appellant,*

v.

JACQUELINE C. SMITH, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia,

*Defendant - Appellee,*

and

COMMONWEALTH OF VIRGINIA,

*Intervenor/Defendant - Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

## RESPONSE BRIEF OF APPELLEE
## JACQUELINE C. SMITH

JOHN C. ALTMILLER
HEATHER R. STEELE
PESNER ALTMILLER MELNICK DEMERS & STEELE PLLC
8000 Westpark Drive
Suite 600
Tysons, Virginia 22102
(703) 506-9440

*Counsel for Defendant - Appellee*
*Jacqueline C. Smith*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-2110          Caption: Courthouse News Service v. Jacqueline Smith

Pursuant to FRAP 26.1 and Local Rule 26.1,

Jacqueline C. Smith, Clerk of Prince William Circuit Court
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                            ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Heather R. Steele                     Date:        11/1/2022

Counsel for: Jacqueline C. Smith

- 2 -

[Print to PDF for Filing]

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... iii

ISSUES PRESENTED ............................................................................. 1

STATEMENT OF THE CASE ................................................................. 2

    I.    Factual Background ................................................................. 2

           a.  The Clerk ...................................................................... 2

           b.  The Statutes ................................................................. 3

    II.    Procedural History ................................................................. 6

SUMMARY OF THE ARGUMENT ........................................................ 10

ARGUMENT .......................................................................................... 12

    I.    Plaintiff Has Not Asserted an Equal Protection Claim ........... 12

           a.  Remote Access to Court Files Is Not a Fundamental Right .............. 13

           b.  Plaintiff Is Not a Suspect Class ................................... 16

           c.  Because Remote Access to Court Files Is Not a Fundamental Right, and Plaintiff Is Not in a Suspect Class, the Equal Protection Claim Is Judged by Rational Basis Standard .................... 16

    II.    Plaintiff Has Not Asserted a First Amendment Claim ............ 18

           a.  To the Extent That the Statute Constitutes a Restriction, Such Restriction Resembles Time Place and Manner .................. 18

           b.  Time Place and Manner Restrictions Are Judged by a Relaxed Scrutiny Standard ................................... 18

i

i.  The Relaxed Scrutiny Standard is Applicable to Regulations Affecting Time, Place, and Manner ................................................19

ii.   The Statute Is Content Neutral......................................................20

iii. The Statute Is Narrowly Tailored to Serve a Legitimate Government Interest.......................................................................21

iv. The Government has a Legitimate Interest in the Protection of Private Information....................................................................22

v.  The Government Has a Legitimate Interest in the Orderly and Efficient Administration of Justice .........................................25

c.  CNS Advocates the Wrong Standard of Review for Regulations Affecting Time, Place, and Manner ....................................................28

III.    Sufficient Evidence Was Presented Demonstrating a Significant Government Interest ................................................................................32

CONCLUSION ....................................................................................................33

CERTIFICATE OF COMPLIANCE.......................................................................34

# TABLE OF AUTHORITIES

## Cases

*Barber v. Conradi,*
　51 F. Supp. 2d 1257 (N.D. Ala. 1999) ............................................................. 27

*Borough of Duryea v. Guarnieri,*
　564 U.S. 379, 131 S. Ct. 2488 (2011) ............................................................. 24

*Courthouse News Serv. v. Planet,*
　947 F.3d 581 (9th Cir. 2020) .................................................... 20, 26, 28, 29, 31

*Courthouse News Serv. v. Schaefer,*
　2 F.4th 318 (4th Cir. 2021) ............................................................................. 26

*Daily Herald Co. v. Munro,*
　758 F.2d 350 (9th Cir. 1984) ........................................................................... 31

*FCC v. Beach Commc'ns, Inc.,*
　508 U.S. 307, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993) ............................... 13

*Frisby v. Schultz,*
　487 U.S. 474, 108 S. Ct. 2495, 101 L. Ed. 2d 420 (1988) ............................... 23

*Globe Newspaper Co. v. Superior Court,*
　457 U.S. 596, 102 S. Ct. 2613 (1982) ........................................................ 18, 19

*Haney v. USAA Cas. Ins. Co.,*
　331 F. App'x 223 (4th Cir. 2009) .................................................................... 14

*In re Moseley,*
　273 Va. 688, 643 S.E.2d 190 (2007) ............................................................... 17

*Lanphere & Urbaniak v. Colorado,*
　21 F.3d 1508 (10th Cir. 1994) ........................................................................ 22

*Leigh v. Salazar,*
　677 F.3d 892 (9th Cir. 2012) ........................................................................... 31

*Maryland v. Universal Elections,*
　787 F. Supp. 2d 408 (D. Md. 2011) ........................................................... 22-23

*Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Lynch,*
　826 F.3d 191 (4th Cir. 2016) ..................................................................... 13, 16

iii

*Press-Enterprise Co. v. Superior Court*,
   478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) .................... 2, 12, 29, 30, 31

*Ross v. Early*,
   746 F.3d 546 (4th Cir. 2014) ....................................................... 21, 32

*Sosa v. Onfido, Inc.*,
   No. 20-cv-4247, 2022 U.S. Dist. LEXIS 74672 (N.D. Ill. Apr. 25, 2022) ....... 22

*Trans Union Corp. v. FTC*,
   345 U.S. App. D.C. 301, 245 F.3d 809 (D.C. Cir. 2001) ................................. 22

*U.S. DOJ v. Reporters Comm. for Freedom of Press*,
   489 U.S. 749, 109 S. Ct. 1468 (1989) ................................................. 23

*United States v. Benton*,
   523 F.3d 424 (4th Cir. 2008) ........................................................... 14

*Vacco v. Quill*,
   521 U.S. 793, 117 S. Ct. 2293 (1997) ................................................. 16

*Ward v. Rock Against Racism*,
   491 U.S. 781, 109 S. Ct. 2746 (1989) ........................................ 1, 12, 19, 20, 30

*Wollschlaeger v. Governor*,
   848 F.3d 1293 (11th Cir. 2017) ....................................................... 22

*Young v. American Mini Theatres, Inc.*,
   427 U.S. 50 (1976) ..................................................................... 19

## Statutes

Va. Code Ann. § 8.01-420.8 ............................................................ 3, 4
Va. Code Ann. § 17.1-225 ................................................................. 3
Va. Code Ann. § 17.1-242 ................................................................. 3
Va. Code Ann. § 17.1-293 .......................................................... *passim*
Va. Code Ann. § 46.2-300 ................................................................. 3

## Other Authorities

U.S. Const. amend. 1 ..................................................................... 24

# ISSUES PRESENTED

1.     Whether there is a fundamental First Amendment right to remote online access to court records in addition to reasonably contemporaneous in-person access.

2.     Whether Courthouse News Service ("CNS") waived its argument that there is a fundamental First Amendment right to remote online access to court records in addition to reasonably contemporaneous in-person access.

3.     Whether a statute that prohibits court clerks from posting certain sensitive information online violates the First Amendment.

4.     Whether a statute that prohibits court clerks from posting certain sensitive information online, but that creates an exception for attorneys, violates the First Amendment.

5.     Whether Virginia's provisions regarding online access to court records satisfy the test set forth in *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746 (1989) because they are content-neutral and narrowly tailored to serve Virginia's important interests in the efficient functioning of its judiciary and the protection of sensitive personal information.

6.     Whether the district court correctly applied the test set forth in *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746 (1989) in scrutinizing the constitutionality of a statute affecting time, place, and manner, rather than applying

the test set forth in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735 (1986).

7.      Whether the district court correctly dismissed CNS's equal protection claim because Virginia has a rational basis for providing online access to court records to officers of the court but not the public at large.

## STATEMENT OF THE CASE

### I.      Factual Background

#### a.  The Clerk

The Appellee, Jacqueline C. Smith, was elected the Clerk of the Circuit Court for Prince William County, Virginia in April 2017. JA81. The Prince William County Clerk (the "Clerk" or "Appellee") is an independently elected constitutional officer and serves as the custodian of all court records, including books, evidence, records, maps, and papers, deposited in her offices or other locations designated by her, including records stored in electronic format whether in the clerk's office or elsewhere. JA81. The Clerk is responsible for making those records available to the public for inspection and examination. JA81.

The Clerk provides the public, including the Appellant, with reasonably contemporaneous access to non-confidential civil filings and other court records at the courthouse during business hours. JA81. Specifically, the Clerk provides terminals where the public can view and copy court records. JA81-82.

2

### b. The Statutes

The Clerk is also responsible for developing and implementing the policies and procedures for operating the Prince William County Circuit Court Clerk's Office in conformance with applicable law, including those relating to access to non-confidential civil filings and other court records that are filed in the Prince William Circuit Court. JA81. The applicable law is central to this case.

The Clerk's rights and obligations with regard to the posting of court filings online are governed by statute. Clerks of court in Virginia may, *but are not required to*, provide "remote access, including Internet access, to all nonconfidential court records on an automated case management or other system maintained by [the Clerk's] office and described in § 17.1-242." Va. Code § 17.1-225. This statute also makes the clerks "responsible for insuring that proper security measures are implemented and maintained to prevent remote access users from obtaining any data that are confidential under this Code and to prevent the modification or destruction of any records by remote access users." *Id*.

The protection of confidential information in court files is addressed by Va. Code § 8.01-420.8, which states that:

> Whenever a party files, or causes to be filed, with the court a motion, pleading, subpoena, exhibit, or other document containing a social security number or other identification number appearing on a driver's license or other document issued under Chapter 3 (§ 46.2-300 et seq.) of Title 46.2 or the comparable law of another jurisdiction, or on a credit card, debit card, bank account, or other electronic billing and payment

3

> system, the party shall make reasonable efforts to redact all but the last
> four digits of the identification number.

Va. Code § 8.01-420.8(A). This statute makes it clear that it applies to all civil actions in the circuit court, unless there is a specifically applicable statute to the contrary. Va. Code § 8.01-420.8(B). One notable aspect of § 8.01-420.8 is that it does not contain an absolute requirement that the filing party redact the information, but rather that the party simply make "reasonable efforts to redact all but the last four digits of the identification number." Va. Code § 8.01-420.8(A).  Furthermore, § 8.01-420.8 imposes no obligation upon the court clerks with regard to redacting or otherwise removing or protecting confidential information.  For clarity, the categories of information identified in Virginia Code § 8.01-420.8 will be referred to as "Confidential Information."

Certain restrictions regarding the posting of certain information by court clerks on the Internet are addressed in Va. Code § 17.1-293. Va. Code § 17.1-293 prohibits circuit court clerks from posting on the Internet

> "any document that contains the following information: (i) an actual
> signature, (ii) a social security number, (iii) a date of birth identified
> with a particular person, (iv) the maiden name of a person's parent so
> as to be identified with a particular person, (v) any financial account
> number or numbers, or (vi) the name and age of any minor child."

Va. Code § 17.1-293(B).  For clarity, the categories of information identified in this statute—which is broader in scope than the Confidential Information identified in Va. Code § 8.01-420.8—will be referred to as "Private Information."  Therefore, Va.

4

Code § 17.1-293 creates a blanket prohibition upon the Clerk posting Private Information on the Internet.

However, the restrictions on posting Private Information on the Internet in Va. Code § 17.1-293 are subject to several exceptions. As is relevant to this case, one of the exceptions allows the clerk to provide

> "secure remote access to nonconfidential court records, subject to any fees charged by the clerk, to members in good standing with the Virginia State Bar and their authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of law, and such governmental agencies as authorized by the clerk."

Va. Code § 17.1-293(E)(7). This exception in § 17.1-293(E)(7) permits court clerks to provide remote access to civil filings over the Internet to attorneys, their staff, and certain governmental agencies, even if those filings contain Private Information that has not been redacted.

Va. Code § 17.1-293 also contains restrictions on dissemination. Specifically, the statute provides that it shall not be "construed to permit any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to any third party, and the clerk, in [her] discretion, may deny secure remote access to ensure compliance with these provisions." Va. Code § 17.1-293(H).

The Clerk currently employs the Officer of the Court Remote Access system ("OCRA") to provide access to nonconfidential civil filings for officers of the court,

including Virginia-licensed attorneys. It has a total of 551 subscribers, with 274 paying users. JA209. Any person may, however, access civil records at the public access terminals at the courthouse more quickly after filing than they are posted to OCRA. JA477.

## II.    Procedural History

Courthouse News Service ("CNS") has sued the Clerk for denying it remote access to civil court filings, alleging violations of its rights under the First and Fourteenth Amendments.[1] CNS has not sued any other circuit court clerk in Virginia alleging that they have violated CNS's rights with regard to remote access to civil court filings.[2]

In its Amended Complaint, CNS alleged that Virginia Code § 17.1-293 is unconstitutional "on its face and as-applied" because it "deprives CNS, and by extension its subscribers and the public, of their First Amendment right[s]" to access and disseminate court records. JA33–34. CNS further alleged that "Virginia Code § 17.1-293 . . . deprives CNS, and by extension its subscribers and the public, of

---

[1] CNS also sued Karl Hade, the Executive Secretary of the Supreme Court of Virginia, but eventually dismissed Mr. Hade as a defendant without prejudice. JA 92-93.

[2] Although CNS takes great effort to highlight the time and resources expended in visiting various courthouses in Virginia (CNS Br. 12-13, 27, 33), it is notable that CNS has not sought any relief against the court clerks of the various jurisdictions whose courthouses it alleges it has difficulty accessing. In fact, CNS provides no evidence or information regarding specific difficulties associated with obtaining documents from the Prince William County Circuit Court.

6

their Fourteenth Amendment right to equal protection" because it "provid[es] remote online access to civil, nonconfidential, public court filings and other public court records to Virginia-licensed attorneys and their staff, . . . but depriv[es] that same access to others, including CNS." JA35–36.

Upon the defendants' motion to dismiss, the court dismissed CNS's equal protection claim. Because "[n]on-attorneys are not a suspect class," and CNS "d[id] not argue that there is any fundamental right to access civil court records *remotely*,"[3] the court held rational basis review applied. JA73–74. The court, however, allowed the First Amendment claims to proceed.

After the dismissal of Mr. Hade as a defendant, the parties filed cross-motions for summary judgment on the remaining First Amendment claim. JA429, JA534. Following a hearing, the district court granted the defendants' motions and denied the plaintiff's motion. JA564. The court found that the "non-attorney access restriction challenged here does not stop Plaintiff from accessing civil court records" because CNS "can freely access the records at the courthouse." JA545. Instead, the

---

[3] CNS confirmed the accuracy of the court's observation in its opposition to the defendants' motion for summary judgment by directly quoting this passage from the court's memorandum opinion, and further stating that "CNS is not seeking a *per se* right of remote access." JA359. Counsel for CNS also confirmed its position during oral argument on the parties' motion for summary judgment: "I think there's an important distinction to be made here, and that is that we do not contend that this case -- in this case, that the First Amendment requires a per se right to remote access." JA437-438.

regulation "merely controls how and when Plaintiff can access such records." JA545. Therefore, the court determined that "the restriction resembles a time, place, and manner restriction and relaxed scrutiny applies." JA545.

The court held that the challenged regulation satisfied time, place, and manner scrutiny because it is "'content-neutral, narrowly tailored, and necessary' to preserve a significant governmental interest." JA545. Specifically, the court found that Virginia's "non-attorney access restriction is content-neutral," because it "applies to all nonconfidential civil court records in the same fashion and does not treat civil court records about a certain subject or topic differently than others." JA547.

The court also found the statute to be narrowly tailored. The court concluded that "electronic publication of litigants' personal data is a plausible threat to citizens' privacy and the fair and orderly administration of justice," and there is "evidence to show that the regulation currently prevents the mass collection of PII by bots." JA551–552. Providing "remote access to information, including 'secure remote access,' poses unique privacy concerns in contrast to information available only in person," given the far higher risks of data mining of online databases. JA540. Thus, "allow[ing] the public and press access to all nonconfidential court records physically at the courthouse" while "mak[ing] that information unavailable *over the internet*," is "specifically targeted to prevent data mining and keep such information

out of the hands of third parties who could engage in criminal conduct or otherwise misuse the information." JA553–554.

The court also found that "the provision of the statute exempting attorneys from the restrictions on clerks posting certain information on the Internet is also narrowly tailored to promote a significant governmental interest in the orderly and efficient administration of the justice system." JA554. In doing so, the court noted that attorneys are "officers of the court" and an "essential part of the justice system," and thus "stand on an entirely different footing than members of the general public." JA554.

The court similarly held that the "dissemination restriction" is content neutral and "resembles a time, place, and manner restriction" such that "relaxed scrutiny applie[d]." JA559–560. Because the provision "does not prevent Plaintiff from selling, posting, or redistributing data obtained from records located at the courthouse," it resembles a time, place, and manner regulation. JA559. The court concluded that the provision satisfied intermediate scrutiny because unfettered dissemination of records obtained from OCRA "would jeopardize citizens' privacy and security." JA562.

CNS timely noticed its appeal on October 25, 2022. JA566.

## SUMMARY OF THE ARGUMENT

CNS has provided no authority to support the conclusion that it has a fundamental First Amendment right to remote access to civil filings in the Prince William County Circuit Court. More importantly, CNS expressly argued to the district court that it was making no such claim. Rather, CNS's First Amendment claims are based upon the fact that the statute at issue contains an exception for Virginia-licensed attorneys. As such, CNS's claim is one of equal protection.

In order for its equal protection claim to be subject to strict scrutiny, CNS must demonstrate that it is either a member of a suspect class, or that the statute in question, Va. Code §17.1-293, infringes upon a fundamental right. Otherwise, CNS's equal protection claim is subject to a rational basis test.

There is no dispute that CNS is not a member of a suspect class. Furthermore, CNS did not argue before the District Court that it had a fundamental right to remote access to civil court records; in fact, it made express representations that it was not asserting such a claim. Therefore, to the extent that CNS now seeks to argue a fundamental right to remote access to civil court records, it has waived that argument.

Under rational basis review, the challenged rule comes bearing a strong presumption of validity, and those attacking the rationality of the rule have the burden to negative every conceivable basis which might support it. The legislature's

10

policy decision to protect sensitive information, and to entrust access to attorneys subject to its jurisdiction and regulation, constitute plausible reasons for the provisions of the statute at issue in this case. Additionally, the exception provided for Virginia-licensed attorneys promotes the government interest in the efficient administration of justice.

To the extent that any First Amendment rights are implicated in the statutory provisions challenged by CNS, those provisions resemble lawful time, place, and manner regulations. A regulation affecting the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but the regulation need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.

The statute in question, which protects sensitive information from being disseminated on the Internet, thus becoming vulnerable to data mining and other misuse, satisfies this test. The narrow exception for Virginia-licensed attorneys, who are subject to the regulation and jurisdiction of the Virginia State Bar and the circuit courts themselves, is also narrowly tailored to serve the government's interest in the efficient administration of justice without carrying the significant risks associated with disseminating sensitive information online.

Furthermore, the provisions of Va. Code §17.1-293 that relate to access are content-neutral. Remote access under the statute is not limited by the communicative content or message of the documents at issue, and the statute is only focused on the protection of sensitive information. None of the categories of private information protected by the statute relate to the content or message being communicated.

Although the Supreme Court's decision in *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S. Ct. 2746 (1989) sets forth the applicable standard for regulations affecting time, place, and manner, CNS insists that the court should have applied a different "rigorous" standard found in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S. Ct. 2735 (1986). This argument is incorrect and overlooks the facts and holdings in both of those opinions.

Finally, the evidence presented to the court was sufficient to satisfy the relaxed scrutiny called for in *Ward*, and the evidence demonstrated that dangers associated with publishing sensitive information contained in civil filings on the Internet are real and not merely conjectural, and that the statute alleviates these harms in a direct and material way.

## ARGUMENT

### I.    Plaintiff Has Not Asserted an Equal Protection Claim

Although CNS appears at times to suggest that it has a fundamental First Amendment right to remote access to civil court filings, the thrust of its argument is

12

that any constitutional right that it has to such remote access arises only from the exception in Va. Code § 17.1-293 relating to Virginia-licensed attorneys. In other words, CNS asserts a right to remote access that is based entirely upon the fact that such access is granted to Virginia-licensed attorneys. Regardless of how it is framed, the clear and repeated argument put forward by CNS in both its brief and its Amended Complaint is dependent upon the exception in the statute granted to attorneys rather than a fundamental right to remote access to court records. As such, CNS's claim is really one of equal protection.

In analyzing an equal protection claim, when a statute neither infringes a fundamental right nor disadvantages a suspect class, courts apply rational basis review. *Nat'l Ass'n for the Advancement of Multijurisdiction Practice (NAAMJP) v. Lynch*, 826 F.3d 191, 196 (4th Cir. 2016)(citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)). Therefore, unless either CNS has a fundamental right to remote access to court records or CNS is a member of a suspect class, the equal protection claim is reviewed by a rational basis standard.

### a. Remote Access to Court Files Is Not a Fundamental Right

Before the district court, CNS did not claim that it has a fundamental right to remote access of civil court records pursuant to the First Amendment. JA70; JA544. Furthermore, CNS did not argue that "there is any fundamental right to access civil court records *remotely*." JA73. In fact, as CNS unequivocally stated to the court

13

both orally and in writing, it was not asserting that a "*per se* right to remote access" is guaranteed by the First Amendment. JA359; JA438.

To the extent that CNS may now seek to argue that it does have a fundamental First Amendment right to remote access, that argument was knowingly, conclusively and intentionally waived when CNS affirmatively represented that it was not doing so. "Failure to raise an argument before the district court typically results in the waiver of that argument on appeal." *Haney v. USAA Cas. Ins. Co.*, 331 F. App'x 223, 230 (4th Cir. 2009)(quoting *United States v. Benton*, 523 F.3d 424, 428 (4th Cir. 2008)). In this case, CNS not only failed to argue the existence of a fundamental First Amendment right to remote access, it expressly disclaimed any such argument.

CNS now attempts to evade the consequence of having waived its argument before the district court by recasting the court's opinion. In its brief, CNS asserts:

> The district court also acknowledged that the basis of CNS' claims *is* in fact "an already established *fundamental* right, the right of access to civil court records," JA70, but refused to apply strict scrutiny on the theory that CNS did "not argue that there is any fundamental right to access civil court records *remotely*." JA73.

CNS Br. 32 (emphasis in original). This is, at best, an incomplete citation of the court's ruling. The complete sentence from which CNS draws the citation reads:

> In effect, Plaintiff argues that Defendants are limiting an already established fundamental right, the right to access civil court records, in an unconstitutional manner by giving one group, Virginia lawyers, remote access while denying it to others.

14

JA70.  This confirms that the entire basis of CNS's claim to a right to remote access rests upon the existence of the exception to the provisions of Va. Code § 17.1-293 applicable to Virginia attorneys.[4]

It is not surprising that CNS would not base its argument before the court upon an alleged fundamental First Amendment right to remote access to civil court records. First, there is no existing legal authority establishing the existence of such a right. Notably, CNS has provided no authority to support a theory that there exists a fundamental First Amendment right of access beyond the contemporaneous access to such files that CNS and all members of the public already have. Second, the statute in question does not limit in any way CNS's existing contemporaneous access to those records.

---

[4] The court confirms this again in its memorandum opinion resolving the parties' motions for summary judgment:

> Thus, Plaintiff is not alleging that the public has a fundamental right to remotely access civil court records guaranteed by the First Amendment. Rather, Plaintiff argues that if Defendants provide Virginia attorneys remote access to civil court records, *then* the First Amendment also requires them to provide the public with remote access. In effect, Plaintiff argues that Defendants are limiting an already established fundamental right the right to access civil court records--in an unconstitutional manner by giving one group, Virginia lawyers, remote access while denying it to others.

JA544 (emphasis in original).

15

### b. Plaintiff Is Not a Suspect Class

CNS does not allege that it is in a suspect class, nor could it. As the court

observed, "non-attorneys are not a suspect class." JA73.

### c. Because Remote Access to Court Files Is Not a Fundamental Right, and Plaintiff Is Not in a Suspect Class, the Equal Protection Claim Is Judged by Rational Basis Standard

If a legislative classification or distinction "neither burdens a fundamental

right nor targets a suspect class," it will be upheld "so long as it bears a rational

relation to some legitimate end." *Vacco v. Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293,

2297 (1997).  Because CNS is not a member of a suspect class and no fundamental

right is burdened, the statute is subject to rational basis review.

Under rational basis review, the challenged rule comes bearing a strong

presumption of validity, and those attacking the rationality of the rule have the

burden to negative every conceivable basis which might support it. *Nat'l Ass'n for*

*the Advancement of Multijurisdiction Practice (NAAMJP) v. Lynch*, 826 F.3d 191,

196 (4th Cir. 2016). In other words, where there are plausible reasons for the rule,

the court's inquiry is at an end. *Id.*  The court's and the legislature's policy decision

to protect sensitive information, and to entrust access to attorneys subject to its

jurisdiction and regulation, constitute plausible reasons for the provisions of §17.1-

293 at issue in this case, and for the Clerk's decision to abide by the requirements of

that statute.

Virginia has an interest in both (i) protecting against the wholesale dissemination of its citizens' sensitive information and (ii) providing attorneys practicing before a particular circuit court all available tools for the efficient conduct and administration of the judicial system. Both of these interests are accomplished by the relevant provisions of §17.1-293. The statute recognizes the unique position of practicing attorneys as distinct from that of non-attorneys, in that (i) attorneys' remote access to court filings aids in the efficient conduct of particular cases and, more broadly, the judicial system and (ii) attorneys are subject to sanctions and discipline for violating the restrictions associated with remote access.

The Virginia Supreme Court has held that "independently of any statutory restriction, the courts of record of this Commonwealth might, in a proper case, suspend or annul the license of an attorney, so far as it authorized him to practice," and that "all courts of record in Virginia have inherent power in a proper case to suspend or annul the license of an attorney practicing in the particular court which pronounces the sentence of disbarment." *In re Moseley*, 273 Va. 688, 695-96, 643 S.E.2d 190, 194 (2007). Further, "the court's authority to discipline attorneys and regulate their conduct in proceedings before that court is also a constitutional power derived from the separation of powers between the judiciary, as an independent branch of government, and the other branches." *Id.*

## II.    Plaintiff Has Not Asserted a First Amendment Claim

As noted above, CNS asserts no First Amendment right to remote access to the civil court records maintained by the Clerk.  Nevertheless, the court determined that the statute at issue "resembles a time, place, and manner restriction and relaxed scrutiny applies."

### a.  To the Extent That the Statute Constitutes a Restriction, Such Restriction Resembles Time Place and Manner

To the extent that any First Amendment rights are implicated in the statutory provisions challenged by CNS, those provisions resemble lawful time, place, and manner regulations. The statute has no effect on CNS's existing right to reasonable contemporaneous access to civil court records, nor does CNS claim such infringement.  In fact, as the court observed, "[i]ndeed, civil court records are accessible more rapidly at the courthouse than they are electronically." JA544 (referencing Joint Stipulations of Fact, ¶ 47. JA87).

### b.  Time Place and Manner Restrictions Are Judged by a Relaxed Scrutiny Standard

The court determined that the statutory provisions in question resembled regulations of time, place, and manner ("TPM"). JA71; JA544-545. The court therefore concluded that it should apply the more relaxed scrutiny as identified in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 598-600, 102 S. Ct. 2613, 2616 (1982). JA71; JA544-545.

### i. The Relaxed Scrutiny Standard is Applicable to Regulations Affecting Time, Place, and Manner

In *Globe Newspaper Co.*, a Massachusetts trial court, relying upon an applicable state statute, ordered the exclusion of the press and general public from the courtroom during a rape trial. In a footnote, the Court noted that "[o]f course, limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech would not be subjected to such strict scrutiny." *Globe Newspaper Co.*, 457 U.S. at 607 n.17, 102 S. Ct. at 2620 (1982)(citing *Young v. American Mini Theatres, Inc*., 427 U.S. 50, 63, n. 18 (1976)).[5] The Court subsequently elaborated on this standard:

> Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."

*Ward v. Rock Against Racism*, 491 U.S. 781, 798-99, 109 S. Ct. 2746, 2757-58 (1989) (citations omitted). *Ward* therefore created a two-pronged test: to survive this more relaxed scrutiny, the regulation must be (i) content-neutral and (ii) narrowly tailored to serve a legitimate government interest. In this context, a

---

[5] Notably, *Globe Newspaper Co*. involved a complete closure of the court, rather than a time, place, or manner restriction on access to records.

19

regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.*

### ii. The Statute Is Content Neutral

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791, 109 S. Ct. at 2754. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. *Id*.

Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech. *Id*. "To be content-neutral, the [challenged] policy cannot target speech based on its communicative content, or draw distinctions based on the message a speaker conveys." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 601 (9th Cir. 2020)("*Planet III*").

The provisions of Virginia Code §17.1-293 that relate to access are content-neutral. Remote access under the statute is not limited by the communicative content or message of the documents at issue. Instead, the statute is focused upon the

20

protection of Private Information. None of the categories of Private Information identified in the statute relate to the content or message being communicated.

The same analysis applies to the provisions of Virginia Code §17.1-293 that are related to restrictions on dissemination. The statute specifically restricts the dissemination of "any data accessed by secure remote access." Virginia Code §17.1-293(H) (emphasis added).  Because this restriction applies to all information accessed remotely, it is not targeted at any specific content. Thus, the limitations on both access and dissemination contained in the statute are content-neutral.

### iii.  The Statute Is Narrowly Tailored to Serve a Legitimate Government Interest

Once content neutrality has been established, the court then proceeds to examine if the regulation at issue is "narrowly tailored" as defined by the applicable authority:

> Under *Ward* and its progeny, a content-neutral regulation directed at the time, place, or manner of protected speech is ordinarily subject to intermediate scrutiny. A regulation is narrowly tailored under this standard if it "'promotes a substantial government interest that would be achieved less effectively absent the regulation'" and does not "burden substantially more speech than is necessary to further the government's legitimate interests." In this vein, the regulation need not be "the least restrictive or least intrusive means" of serving the government's significant interests.

*Ross v. Early*, 746 F.3d 546, 552-53 (4th Cir. 2014)(citations omitted).  In the present case, Va. Code §17.1-293 furthers two legitimate and significant government

21

interests: (i) the protection of Private Information and (ii) the orderly and efficient administration of justice.

### iv.  The Government has a Legitimate Interest in the Protection of Private Information

Virginia has significant interest in the protection of the Private Information of its litigants from wholesale distribution and publication. Protection of individual privacy is a substantial government interest.  *Wollschlaeger v. Governor*, 848 F.3d 1293, 1314 (11th Cir. 2017).

The substantial government interest in protecting individual privacy has arisen in numerous cases involving the First Amendment. For example, protecting the privacy of consumer credit information is a substantial governmental interest. *Trans Union Corp. v. FTC*, 345 U.S. App. D.C. 301, 245 F.3d 809, 818 (D.C. Cir. 2001). In a case challenging the constitutionality of a statute that limited access to information regarding individuals charged with certain criminal offenses, the Tenth Circuit held that privacy considerations constitute a substantial state interest. *Lanphere & Urbaniak v. Colorado*, 21 F.3d 1508, 1514 (10th Cir. 1994).  The government also has a substantial interest in protecting consumers, and more specifically, protecting their privacy in and control over their biometric data. *Sosa v. Onfido, Inc*., No. 20-cv-4247, 2022 U.S. Dist. LEXIS 74672, at *42 (N.D. Ill. Apr. 25, 2022) In another case, the court held that the government has a substantial interest in protecting residential privacy. *Maryland v. Universal Elections*, 787 F.

Supp. 2d 408, 421 (D. Md. 2011)(citing *Frisby v. Schultz*, 487 U.S. 474, 484, 108 S. Ct. 2495, 101 L. Ed. 2d 420 (1988)).

At the core of the government interest in protecting the dissemination of Private Information is the right of a citizen to have some control over when and how such information is made available to third parties. The United States Supreme Court has noted that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763, 109 S. Ct. 1468, 1476 (1989)(emphasis added). Because "[i]n an organized society, there are few facts that are not at one time or another divulged to another . . . the extent of the protection accorded a privacy right at common law rested in part on the degree of dissemination of the allegedly private fact and the extent to which the passage of time rendered it private." *Id.*(emphasis added). As the Court observed in that case, "[p]lainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information." *United States DOJ*, 489 U.S. at 764, 109 S. Ct. at 1477.[6]

---

[6] Ironically, this fact is highlighted by CNS's contention that only a small percentage of civil court filings contain sensitive information. CNS notes:

Potential litigants should not be faced with the dilemma of either not seeking legal relief to which they may be entitled, or having their Private Information posted on the Internet as the price for exercising that fundamental right. Such an outcome could have a chilling effect on citizens exercising their right under the Petition Clause of the First Amendment to seek redress of grievances. "Among other rights essential to freedom, the First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances.'" *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382, 131 S. Ct. 2488, 2491 (2011); U.S. Const., Amdt. 1. This includes the right to file a lawsuit. *Borough of Duryea*, 564 U.S. at 390, 131 S.

---

Similarly, the "Letter from Carl Malamud to The Honorable Lee H. Rosenthal" and a blog post from "computer scientist Timothy Lee," that the Commonwealth also relied on, JA117-118, further casts doubt on Appellees' conclusory assertions that personal identifiers are common. The Malamud letter identified 1,669 out of 2,706,431 filings in 32 federal district courts that contained social security numbers or other private information; the Lee blog post identified 194 out of 1.8 million filings available on PACER where parties tried, but for technical reasons, did not successfully redact private information. Thus, only 0.062% and 0.011% of the filings discussed in those secondary sources, respectively, contained arguably confidential or sensitive information, both a "minute fraction" that fall well short of justifying the challenged restrictions, and consistent with evidence on this point in other CNS litigation.

CNS Br. 55. If the existence of Confidential Information or Private Information is actually uncommon among civil filings, effective data mining and the misuse of such information could only be accomplished through wholesale remote access over the Internet. Additionally, CNS's information is gleaned from federal records, not state records. State courts are the courts of hearth and home, with divorce and real estate issues that would logically contain many more references to personal information. This reinforces the significant government interest at issue.

Ct. at 2496. It should not be controversial that the government has a substantial interest in promoting its citizens' First Amendment rights.

The statute specifically targets information that is highly sought after by third parties to engage in identity theft, data mining, and other crimes, as well as information regarding minor children. The promotion of this governmental interest is indicated by the restrictions on both access to, and dissemination of, Private Information. In fact, Plaintiff does not appear to take any issue with constitutionality of subsection (B) of the statute, which sets forth the categories of Private Information that may not be posted on the Internet. Presumably, CNS agrees that these categories of information are reasonable and should remain protected and private; CNS is not arguing that the scope of the information deemed private is unacceptably broad. Although attorneys are exempt from the remote access limitation, they are not exempt from the restriction on dissemination. The breadth of the dissemination section of the statute is another indication of the importance of the governmental interest in preventing Private Information from getting into the wrong hands, as the dissemination portion of § 17.1-293 restricts everyone from publishing that information when it is obtained from remote access.

> ### v. The Government Has a Legitimate Interest in the Orderly and Efficient Administration of Justice

The second significant governmental interest promoted by Virginia Code §17.1-293 is the orderly and efficient administration of justice. This interest has

been previously recognized by federal appellate courts, including two recent decisions involving CNS. In one case, the Fourth Circuit recognized "the court's important interest in the fair and orderly administration of justice." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (U.S. 4th Cir. 2021). In another, the Ninth Circuit recognized a governmental entity's "legitimate administrative concerns about privacy and confidentiality, accounting protocols, quality control and accuracy, [and] efficient court administration." *Planet III*, 947 F.3d at 597. Even absent such authority, the significance of a governmental interest in the orderly and efficient administration of its court systems appear to be self-evident; for example, an orderly and efficient court can provide relief to litigants more quickly and is better able to comply with criminal defendants' rights to a speedy trial, among other benefits.

This substantial interest as it applies to the deployment of resources in a circuit court clerk's office has also been specifically recognized in a case involving a temporal limitation on access to files in the clerk's office. In that case, the plaintiff sought to review thousands of files in person at the clerk's office. Because of the demands that these ongoing requests put upon her staff, the clerk imposed a limit upon the plaintiff of two hours per week for review of files. The court, after establishing that such a limitation must further a substantial government interest, stated that it had "no trouble holding that the efficient administration of the domestic

relations division of the circuit clerk's office is a substantial government interest." *Barber v. Conradi*, 51 F. Supp. 2d 1257, 1267 (N.D. Ala. 1999)

As discussed in more detail below, this significant interest is manifested in at least two ways: First, remote access to unredacted civil filings by licensed attorneys clearly aids those attorneys in executing their duties. Attorneys are an integral part of the judicial system, and their ability to perform their duties efficiently benefits the entire judicial system; similarly, lack of remote access to that information impairs the attorneys' efficacy in the performance of their job, and therefore affects the efficacy of the system at large. Attorneys are not outside of the justice system—they are officers of the court. Attorneys are an integral part of the overall operation of the courts, and as officers of the court, attorneys have a special duty and burden to act out a key role in the overall administration of justice. Providing access to OCRA to attorneys supports a significant government interest in providing the officers of the court a method to access the records needed in order to perform their job functions without standing in line at the courthouse and causing expensive and time-consuming delays for their clients or the Clerk's office.

Second, remote access improves the efficiency and performance of the clerk's office. Because the documents sought by attorneys are available through remote access, the clerk's office no longer has to dedicate staff to handling in-person requests for the retrieval and copying of those documents. *See* Declaration of Paul

27

Ferguson, ¶ 8. This also improves the efficacy of the judicial system by freeing up clerks to process incoming filings faster and with fewer interruptions, and by freeing up resources to allow the Clerk's office to focus on its true work of ensuring the efficient operation of the courts.

### c. CNS Advocates the Wrong Standard of Review for Regulations Affecting Time, Place, and Manner

Although *Ward* sets forth the applicable standard for regulations affecting time, place, and manner, CNS insists that the court should have applied a different "rigorous" standard. The logic is not easy to follow.

First, CNS points to the majority decision in *Planet III*, observing in CNS's brief that the Ninth Circuit

> **refused** to apply TPM scrutiny in *Planet III* even though the "access polices" there also "resemble time, place, and manner restrictions," *Id*. at 595-96, rejecting the concurrence's argument – similar to that of the district court here – that TPM scrutiny should apply. *Id*. at 596 n.9. Because those policies had the impact of denying the "timely" – i.e., "contemporaneous" – access that is an essential component of the right of access, the Ninth Circuit found they must survive the same constitutional scrutiny the Supreme Court applied in *Press-Enterprise II*.

CNS Br. 42 (emphasis in original). Instead of applying TPM scrutiny as set forth in *Ward*, the court in *Planet III* held that a court administrator must "demonstrate … a 'substantial probability' that its interest in the fair and orderly administration of justice would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest." *Planet III* at 596

(quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 14, 106 S. Ct. 2735, 2743 (1986)("*Press-Enterprise II*").

Therefore, the court in *Planet III* was apparently applying the test articulated in *Press-Enterprise II* rather than the applicable TPM test required by *Ward*. As explained by CNS, the Ninth Circuit described this test as "'rigorous,' but not strict, scrutiny," yet stricter than the intermediate scrutiny applied to pure TPM rules. CNS Br. 42; *Planet III* at 596. In order to understand the problem with CNS's contention that the holding in *Ward* should be ignored, some discussion of the facts and holdings in *Press-Enterprise II* are necessary.

The facts in *Press-Enterprise II* are crucial. At the beginning of a preliminary hearing in a murder trial, the defendant moved to exclude the public from the proceedings under a state statute that required such proceedings to be open unless "exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial." *Press-Enterprise II*, 478 U.S. at 3-4, 106 S. Ct. at 2738. The motion was granted. *Id.* After the hearing was conducted, proceedings commenced regarding release of the transcript:

> On January 21, 1983, the State moved in Superior Court to have the transcript of the preliminary hearing released to the public; petitioner later joined in support of the motion. Diaz opposed the motion, contending that release of the transcript would result in prejudicial pretrial publicity. The Superior Court found that the information in the transcript was "as factual as it could be," and that the facts were neither "inflammatory" nor "exciting," but that there was, nonetheless, "a

29

> reasonable likelihood that release of all or any part of the transcripts might prejudice defendant's right to a fair and impartial trial."

*Press-Enterprise II*, 478 U.S. at 5, 106 S. Ct. at 2738. Therefore, *Press-Enterprise II* involved complete closure of access to a criminal proceeding, rather than alleged temporal restrictions on access to documents connected to a civil lawsuit. In *Press-Enterprise II*, the issue to be decided was the constitutionality of the complete denial of access, as opposed to a theoretical temporal limitation on access to court filings.[7]

The test in Press-Enterprise II is therefore inapplicable. The inapplicable of the holding in *Press-Enterprise II*—and the applicability of the TPM test articulated in *Ward*--is manifest in the text of the opinions themselves. *Press-Enterprise II* contains *no* reference to time, place, and matter. On the other hand, *Ward* expressly references time, place, and manner, and sets forth the proper standard for analysis of such statutes.[8] The concurring opinion in *Planet III* recognized this distinction and declined to apply the incorrect scrutiny to a regulation affecting time, place, and

---

[7] Of course, in this case CNS has contemporaneous access to the information it seeks at the courthouse. In *Press-Enterprise II*, the petitioner had no access to the preceding, either in-person or in transcript form, regardless of whether the petitioner was physically present at the courthouse. The differences between the facts in these two cases could hardly be more significant.

[8] "Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. at 799, 109 S. Ct. at 2757-58.

manner. *Planet III*, 947 F.3d at 603-04. In doing so, the concurring opinion correctly identified that the result of incorrectly applying the test in *Press-Enterprise II* would be to subject regulations affecting TPM to a more exacting—and incorrect—standard than required by *Ward*:

> As an alternative to a time, place, and manner analysis, the majority instead suggests that a straightforward application of the *Press-Enterprise Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986) test should be used; suggesting that it is not the most exacting level of First Amendment scrutiny, but is instead akin to a "'balancing test' that provides 'rigorous,' but not strict, scrutiny." Maj. Op. 26 (citing *Leigh*, 677 F.3d at 900). However, to comply with the scrutiny required by *Press-Enterprise II*, the policy must be "narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." Maj. Op. 6. In other words, "no reasonable alternatives exist to 'adequately' protect that government interest." Maj. Op. 28. Thus, this "no reasonable alternative" requirement ***mirrors the same strict scrutiny analysis Supreme Court precedent does not require***. *See Daily Herald Co.,* 758 F.2d at 359 (holding that to meet the heavy burden of "exacting scrutiny" the State must prove that "no reasonable alternatives" are available to serve the State's legitimate interest).
>
> Because the majority's strict scrutiny analysis does not comply with Supreme Court precedent, I part company with them.

*Id*. (emphasis added). CNS now seeks to apply the incorrect standard of review precisely because it is stricter than the applicable standard.  However, as explained above, the statute issue in this case passes the correct level of TPM scrutiny as set forth in *Ward*.

## III.  Sufficient Evidence Was Presented Demonstrating a Significant Government Interest

In evaluating whether a regulation is narrowly tailored, courts do "not require the government to present a panoply of empirical evidence in order to satisfy this standard, it must nonetheless make some evidentiary showing that the recited harms are real, not merely conjectural, and that the Policy alleviate[s] these harms in a direct and material way." *Ross v. Early*, 746 F.3d 546, 556 (4th Cir. 2014)(internal quotations and citations omitted).  The Appellees have made such a showing.

Evidence of the harm caused by data mining, including the use of bots, was presented in the form of a Declaration from of the Office of the Executive Secretary of the Supreme Court of Virginia. JA127-131.  This Declaration illustrated in great detail (i) how easily data mining can be undertaken when information is made available on the Internet (JA128-129); (ii) how other databases maintained on the Internet have been subject to such data mining, the difficulty the government has had in preventing this activity, the effect that it has had on the government's resources (JA129); (iii) how this activity continued despite the existence of user agreements for those databases (JA130); and (iv) how the government's attempts to prevent data mining have been circumvented (JA130-131). The court found this evidence to be more than sufficient to establish that the harm to be addressed by Va. Code §17.1-293 is "real" and not "merely conjectural."

32

## CONCLUSION

This Court should affirm the judgment of the district court.


Respectfully submitted,

/s/ John C. Altmiller
John C. Altmiller
Heather R. Steele
PESNER ALTMILLER MELNICK
DEMERS & STEELE PLLC
8000 Westpark Drive
Suite 600
Tysons, Virginia 22102
(703)506-9440 – Telephone
(703)506-0929 – Facsimile
Counsel for Defendant-Appellee
Jacqueline C. Smith

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

2.      Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, the foregoing brief contains <u>7,924</u> words.

3.      I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief with the word or line printout.


/s/ John C. Altmiller
John C. Altmiller