**22-2110**

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### *for the*

# 𝔉𝔬𝔲𝔯𝔱𝔥 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

―――――――――――――――

COURTHOUSE NEWS SERVICE,

*Plaintiff/Appellant,*

– v. –

JACQUELINE C. SMITH, in her official capacity as Clerk
of the Circuit Court for Prince William County, Virginia,

*Defendant/Appellee,*

and

COMMONWEALTH OF VIRGINIA,

*Intervenor/Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

―――――――――――――――

**COMBINED PETITION FOR PANEL REHEARING AND
PETITION FOR REHEARING EN BANC OF PLAINTIFF-
APPELLANT COURTHOUSE NEWS SERVICE**

DABNEY J. CARR, IV
LAUREN H. MILLER
TROUTMAN PEPPER LOCKE LLP
Post Office Box 1122
Richmond, Virginia 23218
(804) 697-1238

*Counsel for Appellant*

ROGER MYERS
RACHEL MATTEO-BOEHM
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111
(415) 675 3400

*Counsel for Appellant*

# **<u>TABLE OF CONTENTS</u>**

**Page(s)**

INTRODUCTION AND RULE 40(B) STATEMENT ...............................................1

STATEMENT OF THE CASE.................................................................................4

REASONS FOR GRANTING REHEARING .........................................................7

   I.    The Majority Opinion Conflicts with Intra- and Inter-Circuit Precedent......7

      A.   The Majority Overlook the Definition of "Contemporaneous Access" ....8

      B.   The Majority Did Not Apply the Scrutiny that Precedent Requires..........9

      C.   The Majority Opinion Overlooks and Conflicts with *Fusaro* .................10

   II.   This Case Presents First Amendment Questions of Vital Importance.........12

      A.   The Meaning of "Contemporaneous" and
           Level of Scrutiny Are Critical....................................................................13

      B.   Restricting Access to Some Recipients
           Raises Core Constitutional Issues...........................................................14

      C.   Virginia's Prior Restraint Presents an Issue of Exceptional Importance.15

      D.   The Opinion Departs from Precedent on an Important TPM Issue.........16

CONCLUSION .....................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. C.L. Union of N. Carolina v. Tennyson*,
   815 F.3d 183 (4th Cir. 2016) ................................................................1

*Billups v. City of Charleston*,
   961 F.3d 673 (4th Cir. 2020) ..............................................................16

*In re Charlotte Observer*,
   882 F.2d 850 (4th Cir. 1989) ...........................................................9, 12

*CBS v. Young*,
   522 F.2d 234, 238 (6th Cir. 1975) .....................................................15

*Citizens United v. FEC*,
   558 U.S. 310 (2010)...........................................................................11

*Courthouse News Serv. v. Planet*,
   750 F.3d 776 (9th Cir. 2014) .........................................................12, 14

*Courthouse News Serv. v. Planet*,
   947 F.3d 581 (9th Cir. 2020) .....................................................*passim*

*Courthouse News Serv. v. Schaefer*,
   2 F.4th 318 (4th Cir. 2021) ........................................................*passim*

*Courthouse News Serv. v. Schaefer*,
   440 F. Supp. 3d 532 (E.D. Va. 2020) ...................................................9

*Doe v. Public Citizen*,
   749 F.3d 246 (4th Cir. 2014) .....................................................*passim*

*Falwell v. Flynt*,
   805 F.2d 484 (4th Cir. 1986) ...........................................................2, 3

*Fusaro v. Cogan*,
   930 F.3d 241 (4th Cir. 2019) .....................................................*passim*

*Greater Baltimore Ctr. for Pregnancy Concerns v.*
*Mayor & City Council,*
721 F.3d 264 (4th Cir. 2013) (en banc) .............................................8

*Greater Baltimore Ctr. for Pregnancy Concerns v.*
*Mayor & City Council,*
879 F.3d 101(4th Cir. 2018) ........................................................2, 14

*McCullen v. Coakley,*
573 U.S. 464 (2014)......................................................................6, 16

*Moldea v. New York Times Co.,*
22 F.3d 310 (D.C. Cir. 1994) ..............................................................4

*In re Murphy-Brown, LLC,*
907 F.3d 788 (4th Cir. 2018) ............................................................15

*PETA v. N.C. Farm Bureau,*
60 F. 4th 815 (4th Cir. 2023) ...................................................6, 16, 17

*Press-Enterprise Co. v Superior Court,*
478 U.S. 1 (1986)..................................................................................7

*Reed v. Bernard,*
976 F.3d 302 (3d Cir. 2020) .............................................................13

*Reynolds v. Middleton,*
779 F.3d 222 (4th Cir. 2015) ........................................................6, 16

*Ross v. Early,*
746 F.3d 546 (4th Cir. 2014) ............................................................16

*Rushford v. New Yorker Mag., Inc.,*
846 F.2d 249 (4th Cir. 1988) ........................................................7, 10

*Soderberg v. Carrion,*
999 F.3d 962 (4th Cir. 2021) ............................................................15

*Sorrell v. IMS Health,*
564 U.S. 552 (2011)...........................................................................11

*Stone v. Univ. of Md. Med. Sys. Corp.,*
855 F.2d 178 (4th Cir. 1988) ..............................................................9

*TikTok, Inc. v. Garland*,
    122 F.4th 930 (D.C. Cir. 2024) ........................................................13

*United States v. Burgos*,
    94 F.3d 849 (4th Cir. 1996) (en banc) .............................................17

*United States v. Matthews*,
    209 F.3d 338 (4th Cir. 2000) ...........................................................1

*United States v. Moses*,
    2022 U.S. App. LEXIS 7694 (March 23, 2022) ......................3, 4, 13

*Urofsky v. Gilmore*,
    216 F.3d 401 (4th Cir. 2000) (en banc) ............................................1

*Virginia Dep't of St. Police v. Washington Post*,
    386 F.3d 567 (4th Cir. 2004) ..........................................................10

*In re Wall. St. J.*,
    601 F. App'x 215 (4th Cir. 2015) .................................................6, 15

*Wollschlaeger v. Governor, Fla.*,
    848 F.3d 1293 (11th Cir. 2017) (en banc) .........................................3

## Statutes

Va. Code § 17.1-293(B) ...........................................................................4

Va. Code § 17.1-293(E)(7) .......................................................................4

Va. Code § 17.1-293(H) ................................................................4, 11, 15

## Other Authorities

U.S. Const., Amend. 1 ....................................................................*passim*

Fed. R. App. P. 40 ..............................................................................1, 3

## INTRODUCTION AND RULE 40(B) STATEMENT

"Our 'democracy stands on a stronger footing when courts protect First Amendment interests against legislative intrusion ….'" *United States v. Matthews*, 209 F.3d 338, 341-42 (4th Cir. 2000). "[D]emocracy function[s] best when the channels of disclosure [are] unfettered. It would be folly to forget this fundamental First Amendment premise in complex times when change of every sort confronts us." *Urofsky v. Gilmore*, 216 F.3d 401, 434-35 (4th Cir. 2000) (en banc) (Wilkinson, Chief Judge, concurring in the judgment).

"Chief amongst the evils the First Amendment prohibits are government 'restrictions distinguishing among different speakers, allowing speech by some but not others.'" *Am. C.L. Union of N. Carolina v. Tennyson*, 815 F.3d 183, 186 (4th Cir. 2016) (Wynn, Circuit Judge, dissenting) (quoting *Citizens United v. FEC*, 558 U.S. 310, 340 (2010)). The First Amendment also provides "'the public and press … a *contemporaneous* right of access to court documents'" to "allow[] the public to 'participate in and serve as a check upon the judicial process – an essential component in our structure of self-government.'" *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 327-28 (4th Cir. 2021).[1]

---

[1] All *italicized* emphases are in the original, **bold italics** are added, and citations for internal quotations omitted unless noted.

As Judge Gregory observes in dissent, "this case falls at the juncture of these two lines of jurisprudence," which require strict scrutiny. ECF 79 at 34 ("Dissent"). The majority did not apply strict scrutiny, or address the "listener-based discrimination" the dissent describes, *id.* at 32, in upholding a restriction denying the press and public access online to civil court records that Virginia allows favored "'speakers'" (attorneys and government employees). ECF 79 at 4, 12 ("Opin."). And it left standing "a classic form of prior restraint." Dissent 42.

The Court should grant en banc review because Virginia's novel discriminatory online access "raises serious questions under the First Amendment which this court should consider *en banc*." *Falwell v. Flynt*, 805 F.2d 484, 484 (4th Cir. 1986) (Wilkinson, Circuit Judge, dissenting from denial of rehearing en banc). It should heed Judge Gregory's call to recognize the listener discrimination "lurking in our jurisprudence," the flip side of speaker discrimination. Dissent 32; *see Greater Baltimore Ctr. for Pregnancy Concerns v. Mayor & City Council,* 879 F.3d 101, 111(4th Cir. 2018) (discussing "right to listen").

This case involves other questions of exceptional importance. Under the opinion, the public may ***never*** learn of litigation in much of Virginia because ***all*** media – not just Courthouse News Service ("CNS") – ***must travel*** many miles to review records in courts across the Commonwealth, and counsel with access online ***cannot tell the press*** about them. If followed elsewhere, it would reverse the trend

set by PACER and other states of allowing online access, undermining the
"crucial" role contemporaneous press access plays "'not only [to] the public's
interest in monitoring the functioning of the courts but also the integrity of the
judiciary.'" *Schaefer*, 2 F.4th at 327. "Any panel holding with implications this
far-reaching deserves the attention of the court *en banc*." *Falwell*, 805 F.2d at 489
(Wilkinson, Circuit Judge, dissenting from denial of rehearing en banc).

The panel reach this result by not applying strict scrutiny and misapplying
intermediate scrutiny in a manner inconsistent with circuit precedent. In First
Amendment cases, disputes over the standard of scrutiny warrant rehearing.
*Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1301 (11th Cir. 2017) (en banc).

Moreover, the majority "not only created an *intra*-circuit split" on multiple
issues, *United States v. Moses*, 2022 U.S. App. LEXIS 7694, *12 (Mar. 23, 2022)
(Wynn, Circuit Judge, voting to grant rehearing en banc) [2] – which makes "the full
court's consideration … necessary to secure or maintain uniformity of the court's
decisions," Fed. R. App. P. 40(b)(2)(A) – "it also [acknowledged] an old-fashioned
*circuit* split," *id.* at *12, with *Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th

---

[2] As explained in Section I, the majority opinion conflicts, on the definition of
"contemporaneous access," with *Schaefer* and *Doe v. Public Citizen*, 749 F.3d 246
(4th Cir. 2014); it and *Schaefer* conflict, on the standard of scrutiny applicable to
denials of contemporaneous access, with *Doe* and other circuit precedent, as well
as *Planet III*; and it conflicts, on the standard of scrutiny applied to government
discrimination in deciding who can have remote access to information, with
*Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019).

3

Cir. 2020) ("*Planet III*").  Opin. 10 n.8.  "That alone makes it an exceptionally

important case worthy of en banc review."  *Moses*, 2022 U.S. App. LEXIS 7694 at

*12-13 (Wynn, Circuit Judge, voting to grant rehearing en banc).

In the alternative, the Court should grant panel rehearing, as the majority

overlooked law and facts showing, *inter alia*, Virginia's favoring of attorneys over

the press ***does*** "'reflect a content preference.'"  Opin. 12.  "'Wisdom too often

never comes, and so one ought not to reject it merely because it comes late.'"

*Moldea v. New York Times Co.*, 22 F.3d 310, 311 (D.C. Cir. 1994) (reversing

judgment on panel rehearing).

## STATEMENT OF THE CASE

All federal district courts and courts in 38 states – including Alexandria

Circuit Court in Virginia – allow press and public remote online access to non-

confidential civil court records.  JA79.  Only Virginia's Officer of the Court Remote

Access ("OCRA"), used in 105 of 120 counties, still restricts access to attorneys and

government employees.  Va. Code §§ 17.1-293(B), E(7).  And only Virginia imposes

a prior restraint against "post[ing] on any other website," or making "available to the

general public," information in records accessed online.  § 17.1-293(H).  Attorneys

can, however, use them to market "services … to a third party."  *Id.*

While attorneys can access all civil court records (not only in their own cases)

at any time remotely via OCRA, the media must travel to the courthouse – which

can require hundreds of miles and many hours to reach just one[3] – to see them only during business hours.  Several counties have no local newspaper, and the travel required can "leave[] many Virginia communities without access to reporting on court proceedings of local importance."  Amici Brief of RCFP and 38 Media Organizations 14 (ECF 27-1).

CNS is a national news service that covers civil litigation.  Opin. 5.  Even with three Virginia reporters, it can only cover five counties daily (and Alexandria remotely).  JA80.  After unsuccessfully seeking to register and pay the annual fee for OCRA access at 46 courts, JA88, CNS sued Prince William County Clerk Jacqueline Smith and Karl Hade of the Virginia office that administers the court system, alleging violation of the First Amendment and Equal Protection.

The district court declined to dismiss the First Amendment claims because "Plaintiff argues Defendants are limiting an already established fundamental right … in an unconstitutional manner," but dismissed the Equal Protection claim under the rational basis test because CNS did not allege a *separate* right of remote access. JA70-74.  After Hade exited and Virginia intervened, it granted summary judgment against CNS, applying intermediate scrutiny.  JA553-564.

---

[3] CNS requested judicial notice that a reporter in Norfolk must travel 9-10 hours and 500 miles round-trip to obtain a complaint in Roanoke, and it took CNS five days and 1,036 miles to reach 25 OCRA courts.  ECF 24-1. The Court judicially noticed documents that support the first but not the second.  ECF 62.

On appeal, CNS argued strict scrutiny applied and, even under intermediate scrutiny, Appellees failed to carry their burden of proof as "clarifie[d]" by *McCullen v. Coakley*, 573 U.S. 464 (2014). *Reynolds v. Middleton*, 779 F.3d 222, 232 (4th Cir. 2015). Appellees did not explain how the "'recited harms'" from data mining of personal identifiers were "'real, not merely conjectural,'" absent evidence it occurred in Alexandria, *id.* at 227-28, and presented no evidence of "'attempt[ing] to use less intrusive tools readily available'" on a system that, like OCRA, is behind a paywall. *PETA v. N.C. Farm Bureau*, 60 F.4th 815, 832 (4th Cir. 2023) (quoting *Billups v. City of Charleston*, 961 F.3d 673, 689-90 (4th Cir. 2020)).

The panel majority declined to apply strict scrutiny. It found CNS had "contemporaneous access," but overlooked the definition of "contemporaneous" in *Schaefer* and *Doe* (and bypassed the conflict *Schaefer* created with circuit precedent and *Planet III*). It found OCRA's discrimination content-neutral, but overlooked *Fusaro* and evidence that Virginia sought to prevent records from being used for "direct-marketing," JA331-332, which OCRA allows attorneys to do. It primarily relied on pre-*McCullen* authority to find Appellees satisfied intermediate scrutiny, citing evidence about data mining of databases that ***materially differ*** from OCRA and overlooking evidence that OCRA discriminates to protect counties' revenue. JA223-226, JA472. It found CNS had no standing to challenge the prior restraint, overlooking *In re Wall. St. J.*, 601 F. App'x 215 (4th Cir. 2015).

6

## REASONS FOR GRANTING REHEARING

As Judge Gregory observes, OCRA's "Access Restriction sits at the confluence of two lines of First Amendment jurisprudence:  the First Amendment's guarantee of access to judicial documents and its prohibition on content discrimination."  Dissent 32.  Laws infringing either doctrine strike at the core of the First Amendment and must survive strict scrutiny.  *Id*. at 32-35; *Fusaro*, 930 F.3d at 248; *Doe*, 749 F.3d at 266 (applying *Press-Enterprise Co. v Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") scrutiny to denial of contemporaneous access); *Planet III*, 947 F.3d at 596 (applying same but calling it "'rigorous,' … not strict").

The majority's mistaken refusal to apply strict scrutiny, and its misapplication of intermediate scrutiny, creates intra- and inter-circuit conflicts on questions of exceptional importance and overlooks critical aspects of First Amendment law.

## I.     The Majority Opinion Conflicts with Intra- and Inter-Circuit Precedent

This Court was among the first to extend the right of access to court records in civil cases.  *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249 (4th Cir. 1988). This right applies to records on OCRA, Opin. 7, but the majority "'undermines the benefit of public scrutiny,'" and creates conflicts, by affirming a ban on press access to OCRA that "'delay[s] or postpone[s] disclosure'" unless and until reporters can get into the courthouse, "'and may have the same result as complete suppression'" where they cannot.  *Planet III*, 947 F.3d at 594.

**A.     The Majority Overlook the Definition of "Contemporaneous Access"**

The majority acknowledge the First Amendment "generally requires 'contemporaneous' access."  Opin. 7-8 (quoting *Schaefer*, 2 F.4th at 328).  But it then skips a critical step in the analysis, creating a conflict with *Schaefer* and *Doe*.

The majority says "'contemporaneous' access" means "access 'the same day on which the [document] is filed, insofar as is practicable[,] and when not practicable, on the next court date.'"  Opin. 8 (quoting *Schaefer*, 2 F.4th at 328).  Because the press has that access *if* it can get to the court, the majority sees the issue not as the denial of contemporaneous access, but how and when the press can use it, which "resembles a time, place, and manner ['TPM'] regulation."  *Id.* at 8-9.

The majority overlooks that the definition of "'contemporaneous' in this context" means "'as expeditiously as possible."  *Schaefer*, 2 F.4th at 328 (quoting *Doe*, 749 F.3d at 273).  This "requires courts to make newly filed civil complaints available *as expeditiously as possible*" under the circumstances.  *Id.* at 329.  "In other words," as Judge King said in another First Amendment setting, "context matters."  *Greater Baltimore Ctr. for Pregnancy Concerns v. Mayor & City Council*, 721 F.3d 264, 286 (4th Cir. 2013) (en banc).

In *Schaefer*, it made sense the district court "held that "'contemporaneous *in this context*'" – access *only* at the courthouse in two counties – "'means "the same day on which the complaint is filed, insofar as is practicable.'"  2 F.4th at

328.  That was "as expeditiously as possible" in those circumstances.

In these circumstances – where every attorney around the country (via pro hac vice admission) and any government employee can register for access online – limiting the press and public to access at the courthouse, and requiring travel to 105 counties to exercise it, is manifestly not "as expeditious[] as possible."

## B.     The Majority Did Not Apply the Scrutiny that Precedent Requires

In Judge Wilkinson's oft-repeated phrase, the "public's right of access to judicial records and documents may be abrogated only in unusual circumstances," *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988), where "'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"  *In re Charlotte Observer*, 882 F.2d 850, 852 (4th Cir. 1989).

The majority finds support in *Schaefer* for applying the "'relaxed scrutiny'" from TPM cases.  Opin. 11.  It acknowledges *Schaefer* conflicts with *Planet III*, but believes *Schaefer* does not conflict with *Charlotte Observer* because the latter "addressed courtroom closure and sealing orders in a criminal case."  Opin. 10 n.8.

The majority is mistaken.  "Clear Fourth Circuit precedent requires the application of strict scrutiny to this case."  *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 559 (E.D. Va. 2020), *aff'd*, 2 F.4th 318 (4th Cir. 2021).  The district court, however, misread *Planet III* as applying "intermediate [TPM] review," *id.*, so it applied – and found the restrictions at issue failed – both tests.

In affirming, the *Schaefer* panel treated *Planet III* as applying TPM scrutiny. 2 F.4th at 328. *Planet III* did say denying timely access "resemble[s] [TPM] restrictions," but it ***rejected*** TPM scrutiny as "inapplicable in this context," and applied "'rigorous'" *Press-Enterprise II* scrutiny. 947 F.3d at 595-96 & n.9.

Moreover, the majority err in asserting *Schaefer* did not conflict with circuit precedent. This Court has held any attempt "to ***limit*** … access to documents in civil cases, *Rushford*, 846 F.2d at 253, or "***restrict*** access," must meet the compelling interest test most recently articulated in *Press-Enterprise II*. *Virginia Dep't of St. Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).

## C.  The Majority Opinion Overlooks and Conflicts with *Fusaro*

In not applying strict scrutiny to OCRA's "'listener-based discrimination,'" Dissent 32, the majority overlook circuit precedent and material facts. The majority conclude OCRA is not subject to strict scrutiny because it "does not reflect a preference about *what* records non-attorneys may access but *how* non-attorneys may access those records." Opin. 12. But it overlooks *Fusaro*, which holds statutes discriminating in ***how*** speaker/recipients can access information – limiting remote access to state residents while requiring others to travel to an office – "must survive strict scrutiny" where there is an underlying right of access, the restriction "'burden[s] political speech'" and is not "part of a 'complex[] election code[]' enacted by the [state] legislature." 930 F.3d at 248-57.

The opinion cannot be squared with *Fusaro*. Contemporaneous access to civil court records facilitates political speech because it "enable[s] the free and informed discussion about important issues of the day and governmental affairs." *Planet III*, 947 F.3d at 589. And "'when the government has decided to make certain information available, there are "limits to its freedom to decide ***how*** that benefit will be distributed."'" Dissent 35-36 (quoting *Fusaro*, 930 F.3d at 255).

The majority finds "no reason to think that providing Virginia attorneys, but not the general public, with online access to court records has any relation to the content of the records." Opin. 12. But *Fusaro* treated a content-based restriction as separate from recipient-based "conditions on access" that burden political speech, 930 F.3d at 254-55, as has the Supreme Court. *Citizens United*, 558 U.S. at 340 ("restrictions distinguishing among different speakers").

The majority also overlook evidence that OCRA's discrimination ***is*** content related. Virginia says it limits remote access to those who "need it most," JA117, but why do attorneys need records beyond their own cases more than the press? Because OCRA lets attorneys use them to market their services, Va. Code § 17-1.293(H), while limiting access to prevent "direct-marketing" by others, JA331-332, which is protected speech. *Sorrell v. IMS Health*, 564 U.S. 552 (2011). It therefore "limit[s] access … based on the identity of the requester (the would be 'listener') as a means of controlling the content of the listener's resulting speech." Dissent 35.

## II.    This Case Presents First Amendment Questions of Vital Importance

"[P]erhaps most fundamentally, … the [majority's] assessment [reflects] a basic misapprehension and undervaluation of the core first amendment value at stake." *Charlotte Observer*, 882 F.2d at 856.  Its opinion reads like the dispute is about physical versus online access at one court, Opin. 3 (CNS "would like to skip the trip to the courthouse"), as if the difference between access ***only*** in person at 105 far-flung courts and access remotely implicates no "unconstitutional time lag or delay" as long as records are simultaneously available through both.  Opin. 8.

Turning a blind eye to the reality of restricting the press to physical access while allowing attorneys remote access "unduly minimizes, if it does not entirely overlook, the value of 'openness' itself." *Charlotte Observer*, 882 F.2d at 856.  It will foster "'news deserts'" where residents with no local press receive no news about local litigation, ECF 27-1 at 14, depriving them of information necessary to "'ensure[] that th[e] constitutionally protected discussion of governmental affairs is an informed one.'" *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014) ("*Planet I*").  ***Theoretical availability means nothing if no one can use it***. While the Constitution may not require government to provide remote access in the first instance, the question whether government can provide remote access to its own employees and attorneys while denying it to the press is profoundly important, similar to the question addressed, and answered the opposite way, in *Fusaro*.

12

**A.      The Meaning of "Contemporaneous" and Level of Scrutiny Are Critical**

The First Amendment provides "a contemporaneous right of access" because "the public benefits attendant with open proceedings are compromised by delayed disclosure." *Doe*, 749 F.3d at 272.  In an era of technological change, affirming that "'contemporaneous'" means access "'as expeditiously as possible" in "this context," *Schaefer*, 2 F.4th at 328, not "at the courthouse" the "'day on which the [document] is filed,'" Opin. 8, is exceptionally important. *Reed v. Bernard*, 976 F.3d 302, 308-09 (3d Cir. 2020) ("[a]ccess means more than the ability to 'squeeze through the [courthouse] door,'" and "restriction [that] 'meaningfully interferes with the public's ability to inform itself of the proceeding'" … is unconstitutional" unless it satisfies strict scrutiny) (Krause, Circuit Judge, dissenting), *reh'g en banc granted, opinion vacated*, 984 F.3d 273 (3d Cir. 2021).

Moreover, the question of "which standard of scrutiny should apply: strict or intermediate" is "an important, potentially outcome-determinative one," *TikTok, Inc. v. Garland*, 122 F.4th 930, 975 (D.C. Cir. 2024) (Srinivasan, Chief Judge, concurring in part), *aff'd*, 2025 WL 222571 (U.S. Jan. 17, 2025), particularly where, as here, it creates intra- and inter-circuit splits. *Moses*, 2022 U.S. App. LEXIS 7694 at *12-13 (Wynn, Circuit Judge, voting to grant rehearing en banc).

**B.     Restricting Access to Some Recipients Raises Core Constitutional Issues**

Judge Gregory's call to recognize "listener-based discrimination" also raises a question of exceptional importance.  The doctrine is well-grounded in the law. "'[F]ree speech carries with it some freedom to listen.'"  *Planet I*, 750 F.3d at 785 (quoting *Richmond Newspapers*, 448 U.S. at 576); *Greater Baltimore*, 879 F.3d at 111 (First Amendment "'protects both a speaker's right to communicate information and ideas … and the intended recipients' right to receive [them]").

Indeed, Judge Gregory's view that allowing attorneys but not the press to access records remotely constitutes "listener-based discrimination" follows from *Fusaro*, which "'recognized that restrictions on the disclosure of government-held information can … burden the expression of potential recipients and so transgress the First Amendment.'"  930 F.3d at 254 (quoting *Sorrell*, 564 U.S. at 569).

Recognizing "listener-based discrimination" is critical to prevent government from "limiting access to its records based on the identity of the requester … as a means of controlling the content of the listener's resulting speech."  Dissent 35.  The "purpose of CNS's effort to timely access … civil complaints is to report on whatever newsworthy content they contain, and CNS cannot report on complaints" filed in regions to which it cannot timely travel and cannot access remotely (while attorneys can).  *Planet I*, 750 F.2d at 787-88.

14

**C.     Virginia's Prior Restraint Presents an Issue of Exceptional Importance**

The majority opinion also requires rehearing because it left in place "a blatant form of prior restraint," Dissent 44, which "bear[s] 'a heavy presumption against … constitutional validity.'" *In re Murphy-Brown, LLC*, 907 F.3d 788, 797 (4th Cir. 2018); *see* (en banc) (after divided panel affirmed prior restraint, en banc court held "the order violated the First Amendment"), *aff'd*, 452 U.S. 89 (1981).

 Section 17.1-293(H) is "a particularly odious threat to the rights enshrined in the First Amendment," Dissent 43, as it "target[s] speech relating to pending litigation, a topic right at the core of public and community life." *Murphy-Brown*, 907 F.3d at 797.  Records on OCRA are identical to those at court, yet Virginia prohibits telling the public (or press) anything in them.  Dissent 43-44.  This restraint does not apply to records obtained at the court, but "a partial ban" on speaking about public court records "lawfully obtained" via OCRA violates the First Amendment.  *Soderberg v. Carrion*, 999 F.3d 962, 969 (4th Cir. 2021).

In finding CNS lacked standing to challenge the restraint, Opin. 28, the opinion conflicts with *Wall St. J.*, 601 F. App'x at 218 (recognizing media standing to challenge prior restraint on litigants "because [the media's] right … to gather news" was impaired); *accord CBS v. Young*, 522 F.2d 234, 238 (6th Cir. 1975).

**D.      The Opinion Departs from Precedent on an Important TPM Issue**

The majority held the access restriction was narrowly tailored based mainly

on *Ross v. Early*, 746 F.3d 546 (4th Cir. 2014). But *McCullen* subsequently

"***clarified the law*** governing the evidentiary showing required of a governmental

entity seeking to uphold a speech restriction under intermediate scrutiny."

*Reynolds*, 779 F.3d at 232. The opinion is inconsistent with post-*Ross* precedent

finding the government had not carried its burden.

The majority overlook the restriction is "truly exceptional," as "no other

State" currently prohibits the public and press from remote access, which suggests

"the Commonwealth has too readily forgone options that could serve its interests

just as well," *McCullen*, 573 U.S. at 490; cite no evidence Virginia "attempted to

use 'less intrusive tools readily available'" ***for a system like OCRA***, or "seriously

'considered different methods that other jurisdictions have found effective,"

*Billups*, 961 F.3d at 688-90, "a nonnegotiable requirement in this Circuit," *PETA*,

60 F.4th at 831; and fail to recognize OCRA "burdens a wide range of protected

speech," *Reynolds*, 779 F.3d at 230, making it "substantially more difficult" for ***all***

***press*** to report on court records. *McCullen*, 573 U.S. at 488.

The majority sow confusion by relying on evidence that alternatives did not

work on ***vastly different systems***, Opin. 16-20 – not behind paywalls, open without

registration (OCIS) or designed to allow searching for personal identifiers (VDBC)

– while refusing to consider "other jurisdictions offer[ing] the public online access to court records," like Alexandria or PACER, because **CNS did not carry a burden it does not have** of showing how those "systems work." Opin. 25.

The Court should grant rehearing "to clarify the law of this circuit," *United States v. Burgos*, 94 F.3d 849, 853 (4th Cir. 1996) (en banc), requires, *inter alia*, apples-to-apples evidence, and "'argument unsupported by th[at] evidence will not suffice.'" *PETA*, 60 F.4th at 832 (quoting *Reynolds*, 779 F.3d at 229).

## CONCLUSION

For these reasons, the Court should grant rehearing en banc or by the panel.

Dated: February 5, 2025

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Roger Myers*
Roger Myers
Rachel Matteo-Boehm
3 Embarcadero Center, 7th Floor
San Francisco, California 94111
Tel: (415) 675-3400
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com

**TROUTMAN PEPPER LOCKE LLP**

By: */s/ Dabney J. Carr IV*
Dabney J. Carr IV
Lauren H. Miller
P.O. Box 1122
Richmond, Virginia 23218
Tel: (804) 697-1238
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Appellant Courthouse News Service*

17

**CERTIFICATE**

1. This petition complies with the type-volume limitation of Fed. R. App. P. 32 because this petition contains 3,900 words, excluding the parts of the petition exempted by Fed. R. App. P. 32(f).

2. This petition complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced 14-point Garamond font using Microsoft Word.

By: _/s/ Roger Myers_          By: _/s/ Dabney J. Carr IV_
Roger Myers                          Dabney J. Carr IV