UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 22-2110
(3:21-cv-00460-HEH)
_____

COURTHOUSE NEWS SERVICE

       Plaintiff - Appellant

v.

JACQUELINE C. SMITH, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia

       Defendant - Appellee

and

COMMONWEALTH OF VIRGINIA

       Intervenor/Defendant - Appellee

------------------------------

THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS AND 38 MEDIA ORGANIZATIONS

       Amicus Supporting Appellant

_____

O R D E R
_____

The Court denies the petition for rehearing and rehearing en banc.

A requested poll of the Court failed to produce a majority of judges in regular active service and not disqualified who voted in favor of rehearing en banc. Chief Judge Diaz, Judge Niemeyer, Judge Agee, Judge Wynn, Judge Thacker, Judge Harris, Judge Richardson, Judge Quattlebaum, Judge Rushing, and Judge Heytens voted to deny rehearing en banc. Judge King, Judge Gregory, Judge Benjamin, and Judge Berner voted to grant rehearing en banc. Judge Wilkinson is recused and did not participate in the poll.

Entered at the direction of Judge Rushing.

For the Court

/s/ Nwamaka Anowi, Clerk

GREGORY, Circuit Judge, dissenting from the denial of petition for rehearing en banc:

A majority of the sitting members of this Court voted to deny en banc review in this important case. Because this case involves questions of "exceptional importance," warranting this Court's full review, Fed. R. App. P. 40(b)(2)(D), I voted to grant the petition and, today, I dissent from the denial of Courthouse News's petition for en banc review.

This case concerns two First Amendment challenges to Virginia's regulations on online access to public court records. Virginia has created an online database, the Officer of the Court Online Remote Access System ("OCRA"), which allows attorneys and some government officials to access public court documents. However, by statute, access to this database is forbidden for non-attorney members of the public ("the Access Restriction"). Va. Code § 17.1-293(E)(7). In other words, Virginia has a blanket prohibition on journalists accessing OCRA. The second Virginia regulation at issue prohibits journalists and others—including attorneys—from disseminating *any* information obtained from OCRA ("the Dissemination Restriction"). Va. Code § 17.1-293(H).

Courthouse News, a news service primarily focused on covering developments in state and local courts, challenged Virginia's restrictions as violations of the First Amendment. It argued that the Access Restriction infringed on its right of access and constituted content-based discrimination, and that the Dissemination Restriction was a form of prior restraint. The majority of a panel of this Court held that the Access Restriction was nothing more than a permissible time, place, and manner restriction. And

without considering the Dissemination Restriction's blatant unconstitutionality, the panel majority held that Courthouse News lacked standing to challenge it.

I believe that this case presents three questions of exceptional importance warranting en banc review. First, it concerns the proper standard of review when the government provides some members of the public, but not all, access to a repository of government records. In other words, what level of review is necessary when the government selectively bars the proverbial doors to the room where it happens? When the government makes information available, may it arbitrarily and with impunity ban some from hearing the news of the day? In my view, these questions are not only important, but timely and essential to protecting the freedom of the press—a freedom that in turn gives vigor and vibrancy to the people's rights of free speech and assembly.

Second, it presents the question of which standard of review to apply when the government bars the press from disseminating admittedly public and non-confidential court documents. Respectfully, I believe that both we and the Supreme Court have squarely held that dissemination restrictions of the type that Virginia imposes here are subject to the highest level of scrutiny. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975) ("[T]he First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection."); *see also Soderberg v. Carrion*, 999 F.3d 962, 967 (4th Cir. 2021). To the extent that there is any uncertainty on this matter, it certainly warranted the review of the full court.

Third, this case presents questions on the scope of First Amendment standing jurisprudence. As the Supreme Court has repeatedly affirmed, standing requirements are lessened in the First Amendment context. *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984); *see also Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) ("First Amendment cases raise unique standing considerations that tilt dramatically toward a finding of standing") (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)). Indeed, "[t]he leniency of First Amendment standing manifests itself most commonly in the doctrine's first element: injury-in-fact." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 212 (4th Cir. 2017) (quoting *Cooksey*, 721 F.3d at 235). Yet, despite this, the panel majority's opinion erects another roadblock in the way of First Amendment litigants: it requires journalists to identify their would-be sources (i.e. "a speaker willing to convey the information to [it]") if the challenged restriction was lifted. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 917 (4th Cir. 2025) (cleaned up). Because Courthouse News failed to name such an attorney, the panel majority concluded Courthouse News's injury was "too speculative to support standing." *Id.* (cleaned up). But, we have, in the past, balked at requiring journalists to identify to their would-be sources. *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 228, 228 n.13 (4th Cir. 2019). And for good reason. But-for the Dissemination Restriction, Courthouse News certainly could find *a* lawyer in Virginia willing to provide it with information obtained from OCRA. Any assertion to the contrary strains credibility and contradicts common sense. The panel majority's pleading requirement merely puts form over substance. To the extent that our precedent may suggest otherwise, en banc review was appropriate to correct this error.

These three questions are of monumental importance. And I believe the panel majority's opinion—and its endorsement of Virginia's restrictions—poses a grave threat to the independence and integrity of the press and our system of ordered liberty. "There is little need to reiterate that the freedoms of speech and of the press rank among our most cherished liberties." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 381 (1973). From the Federalist Papers to the Pentagon Paper,[*] newspapers have played a vital role in our democracy. As Thomas Jefferson observed, "[o]ur liberty depends on the freedoms of the press, and that cannot be limited without being lost." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 548 (1976) (quoting 9 Papers of Thomas Jefferson 239 (J. Boyd ed. 1954)). So, the press's constitutional protections "are not for the benefit of the press so much as for the benefit of all of us." *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967).

The essential freedom of press extends to the freedom to gather information. "'In the First Amendment, the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy.'" *Pittsburgh Press Co.*, 413 U.S. at 381–82 (quoting *N.Y. Times Co.*, 403 U.S. at 717 (Black, J. concurring)). This includes the

---

[*] In a case that, as Justice Douglas predicted, has gone "down in history as the most dramatic illustration of that principle [that the government may not suppress the press]," *N.Y. Times Co. v. United States*, 403 U.S. 713, 724 (1971) (per curiam) (Douglas, J. concurring), the Supreme Court held that the government's attempts to enjoin the New York Times and the Washington Post from publishing the Pentagon Papers constituted an unconstitutional form of prior restraint, *id*. at 714 (per curiam). In his concurring opinion, Justice Black affirmed that the First Amendment ensures that "[t]he press . . . [serves] the governed, not the governors." *Id*. at 717 (Black, J. concurring). An injunction preventing the publication of the Pentagon Papers would "amount[] to a flagrant, indefensible, and continuing violation of the First Amendment" and "make a shambles of the First Amendment." *Id*. at 715 (Black, J. concurring). Today, I fear, this Court turns it back on these fundamental principles, so eloquently expressed by Justice Black.

"freedom to listen." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (plurality opinion). "[L]egitimate news gathering activities . . . underlie the proper functioning of the First Amendment," *In re Murphy-Brown, LLC*, 907 F.3d 788, 800 (4th Cir. 2018), so "without some protection for seeking out the news, freedom of the press could be eviscerated," *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972). This includes access to government records. After all, "[a] free press cannot be made to rely solely upon the sufferance of government to supply it with information." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 104 (1979).

Virginia's and the panel majority's primary retort—that Courthouse News can send a journalist to manually retrieve the same documents from courthouses—distorts the question. The panel majority treats OCRA as a window into the courthouse and reasons that, because Courthouse News can enter the physical courthouse, closing OCRA to it and other journalists raises no constitutional concerns. But the proper analysis examines OCRA itself—not any other potential method that journalists could use to access similar information. And it is undisputed that Virginia explicitly and intentionally shuts OCRA's doors to journalists. Virginia is picking and choosing who has access to a repository of public court records; records which the Supreme Court has recognized are "public property." *Cox Broadcasting Corp.*, 420 U.S. at 492 (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)). This flies in the face of the First Amendment.

The panel majority's solution ignores geography and consigns journalists to a never-ending road-trip. Virginia is a vast state, home to over one hundred courthouses. We live in an era of shrinking newsrooms, posing a particular threat to state and local news

7

coverage. *See Andrew v. Clark*, 561 F.3d 261, 272–73 (4th Cir. 2009) (Wilkinson, J. concurring). In reality, news organizations like Courthouse News are not able to fund the kind of trips the majority envisions. Instead, they focus coverage on Virginia's most populous and centrally located jurisdictions. *See* J.A. 154. It is Virginia's small and rural communities—those nestled in the foothills of the Appalachian Mountains or dotting the shoreline of the Chesapeake Bay—who suffer the most. The Court today has endorsed an effective media blackout on vast swaths of the Commonwealth and its people. But these small communities deserve a press capable of shining a light on the faults and failures of their local governments' policies. As history has shown us, sometimes the smallest halls of power breed the greatest injustices.

As James Madison warned, "[a] popular Government without popular information or the means of acquiring it, is but a Prologue to a Farce or a Tragedy or perhaps both." *Branzburg*, 408 U.S. at 728 (Stewart, J. dissenting) (quoting 9 Writings of James Madison 103 (G. Hunt. Ed. 1910)). For centuries, the judiciary has stood as a proud defender of the press—just as the press has served to protect the integrity of the justice system. *See Neb. Press Ass'n*, 427 U.S. at 559–60 ("[a] responsible press has always been regarded as the handmaiden of effective judicial administration.") (cleaned up). But today, we abandoned our post.

As the saying goes, democracy dies in darkness. And today, this Court endorsed two regulations that cast a dark pallor over the functioning of Virginia's justice system. Because this case warrants further review, I respectfully dissent from the denial of en banc review.